**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **RIVER TERRACE ESTATES, INC.** | ) | **Case No. 14-11829** |
| | ) | **Chapter 11** |
| **Debtor.** | ) | **Judge Robert E. Grant** |

**PLAN OF REORGANIZATION FILED BY
RIVER TERRACE ESTATES, INC.
DATED: JULY 22, 2014**

Jeffrey A. Hokanson, Esq.
Frost Brown Todd LLC
201 N. Illinois Street
Suite 1900
Indianapolis, Indiana 46204

-and-

Bobby Guy, Esq.
Robin Bicket White, Esq.
Frost Brown Todd LLC
The Pinnacle at Symphony Place
150 3rd Avenue South, Suite 1900
Nashville, TN 37201

-and-

Ronald E. Gold, Esq.
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202-4182

PROPOSED ATTORNEYS FOR RIVER TERRACE ESTATES, INC., DEBTOR AND
DEBTOR IN POSSESSION

River Terrace Estates, Inc., Debtor and Debtor-in-possession (the "Debtor"), files this Plan of
Reorganization pursuant to Title 11 of the United States Code and requests confirmation hereof.

# ARTICLE I
# RULES OF INTERPRETATION, COMPUTATION OF TIME, AND DEFINITIONS

**Definitions**. Unless the context requires otherwise, the following words and phrases shall have the meanings set forth below when used in initially capitalized form in this Plan:

1.1.     <u>Accounts Receivable Price</u> shall have the meaning set out in <u>Section 5.3</u>.

1.2.     <u>Administrative Claim</u> means any Professional Fees of the Chapter 11 Professionals Allowed under section 503(b) of the Bankruptcy Code that becomes an Allowed Claim, the fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6), and Allowed Claims for actual, necessary costs and expenses incurred after the Filing Date for preserving the estate and operating the business of the Debtor.

1.3.     <u>Administrative Expenses Bar Date</u> means the date  which is Twenty-Eight (28) days after the Effective Date, by which any holder of an Administrative Claim and any Chapter 11 Professionals must assert Administrative Expenses  against the Debtor for goods, services, or costs of preserving the estate (including any tort or professional liability claims against the Debtor relating to the period between the Filing Date and the Effective Date), incurred or accrued through the Effective Date; <u>provided, however</u>, that any Administrative Claims owed to parties being paid in the ordinary course of business and in Classes whose claims have been Reinstated under this Plan need not be filed by such parties but will be determined and paid by Debtor in the ordinary course of its business.

1.4.     <u>Allowed</u> means, with respect to a Claim or Interest, (a) any Claim against, or Interest in, the Debtor, proof of which is timely filed or by order of the Bankruptcy Court is not or will not be required to be filed, (b) any Claim or Interest that has been or is hereafter listed in the schedules of liabilities filed by the Debtor, as liquidated in amount and not disputed or contingent or (c) any Claim or Interest allowed pursuant to this Plan and, in each such case in (a) and (b) above, to which either (i) no objection to allowance has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (ii) such objection is so interposed and the Claim or Interest will have been allowed by a Final Order (but only to the extent so allowed).

1.5.     <u>Assets</u> means all interests, legal or equitable, in property, real, personal, tangible and intangible, of the Debtor as defined in section 541(a) of the Bankruptcy Code.

1.6.     <u>Ballot</u> means with respect to any class of Claims or Interests that are Impaired and entitled to vote under this Plan, the forms being distributed to holders of Claims and Interests to be used for showing acceptance or rejection of this Plan.

2

**1.7.**     Bankruptcy Code means Title 11 of the United States Code, as amended from time to time, as applicable to the Reorganization Case.

**1.8.**     Bankruptcy Court means the United States Bankruptcy Court for the Northern District of Indiana, Ft. Wayne Division, or any court having jurisdiction under Title 28 of the United States Code over this case.

**1.9.**     Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under Section 2075 of title 28 of the United States Code and the Local Rules of the Bankruptcy Court, as applicable from time to time during the Reorganization Case.

**1.10.**     Bar Date means any date fixed by the Bankruptcy Court, pursuant to Bankruptcy Rule 3003(c)(3), by which all Entities asserting Claims against the Debtor (other than Administrative Claims or Rejection Claims) are required to file proofs of claim or be forever barred from asserting such claims against the Debtor.

**1.11.**     Base Cash Purchase Price shall have the meaning set out in Section 5.1.1.

**1.12.**     Bid Date means the first Business Day that is seven (7) days after the Effective Date.

**1.13.**     Bidder means any prospective buyer submitting a conforming bid by the Bid Date.

**1.14.**     Bidder's Asset Purchase Agreement means the form asset purchase agreement to be filed as a Plan Exhibit, and, upon consummation of a Plan Sale, shall mean the actual asset agreement and related documents executed in connection therewith.

**1.15.**     Business Day means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.16.**     Cash means cash, cash equivalents, and readily marketable securities or instruments, including but not limited to, bank deposits, certified or cashier's checks, timed certificates of deposit issued by any bank, commercial paper, and readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof.

**1.17.**     Causes of Action mean all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

**1.18.**     Chapter 5 Claims shall have the meaning set out in Section 9.2.

**1.19.**   Chapter 11 Professionals means the professionals retained by the Debtor wherever they are referred to collectively in this Plan, the retention of which has been approved by the Bankruptcy Court, and any other professionals which are authorized to be compensated from the estate by Final Order of the Court.

**1.20.**   Claim means a claim as that term is defined in section 101(5) of the Bankruptcy Code against the Debtor.

**1.21.**   Claimant means the holder of any Claim.

**1.22.**   Community means the Property and the Operating Assets.

**1.23.**   Confirmation Date means the date on which the Confirmation Order will be entered on the docket maintained by the Clerk of the Bankruptcy Court with respect to the Reorganization Case.

**1.24.**   Confirmation Hearing means the date or dates on which the Bankruptcy Court conducts a hearing on confirmation of this Plan.

**1.25.**   Confirmation Order means the order of the Bankruptcy Court confirming this Plan.

**1.26.**   Date of Allowance means the date that an order allowing a Claim or Interest to which an objection has been filed, or which has been scheduled as disputed or contingent or unliquidated or is otherwise Disputed,  has become final and non-appealable.

**1.27.**   Debt Service Reserve Fund means the funds held by the Debtor on the Petition Date, pursuant to the terms and conditions of the Series 2001 Bond Documents, for the payment of debt service to the holders of the Series 2001 Bonds.

**1.28.**   Debtor means River Terrace Estates, Inc., an Indiana not for profit corporation.

**1.29.**   DIP Lender means the Foundation.

**1.30.**   DIP Lien means the liens, claims, and encumbrances of the DIP Lender on the DIP Loan Collateral.

**1.31.**   DIP Loan means the debtor-in-possession loan to be advanced by the Foundation and approved by the Bankruptcy Court, plus $50,000 advanced by the Foundation immediately prior to the filing of this case to fund the Debtor's operations and expenses in connection with this case.

**1.32.**   DIP Loan Collateral means a lien on any unencumbered Assets of the Debtor, and a junior lien on any encumbered Assets of the Debtor; provided, however, the DIP Loan Collateral shall not include any causes of action under Chapter 5 of the Bankruptcy Code.

4

**1.33.**  <u>Disbursing Agent</u> means the Reorganized Debtor or any party designated by the Reorganized Debtor to serve as distributing agent under this Plan, including, in the case of the Series 2001 Bonds and the Series 2014 Bonds, the Indenture Trustee.

**1.34.**  <u>Disclosure Statement</u> means the Disclosure Statement, as may be modified or amended, accompanying and describing this Plan.

**1.35.**  <u>Disputed or Disputed Claim</u> means with respect to Claims, any Claim that is not Allowed.

**1.36.**  <u>Distributions</u> means distributions to the various classes of Claims and Interests as provided in this Plan.

**1.37.**  <u>Effective Date</u> means the date after the entry of the Confirmation Order confirming this Plan that the conditions to the effectiveness of this Plan have been satisfied or waived.

**1.38.**  <u>Entity</u> means any individual, corporation, limited or general partnership, limited liability company, joint venture, association, joint stock company, estate, entity, trust, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

**1.39.**  <u>Exit Financing Facility</u> means up to $500,000 to be loaned by the Foundation to the Reorganized Debtor upon the Sale Period Expiration Date and repaid pursuant to the New Foundation Note.

**1.40.**  <u>Filing Date</u> means July 15, 2014, which is the date on which a voluntary case under chapter 11 of the Bankruptcy Code was commenced by the Debtor.

**1.41.**  <u>Final Order</u> means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (a) which has become final for purposes of 28 U.S.C. § 158 or such analogous law or rule in the case of an order of a state court and (b)(i) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor (or, if after the Effective Date, by the Reorganized Debtor) or, (ii) in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, (x) such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed with no modifications thereof, or (y) certiorari, reargument or rehearing has been denied, and (z) the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired with no such further appeal, petition for certiorari or motion for reargument or rehearing having been sought or pending; provided, however, that the possibility that a motion under Rule 60

of the Federal Rules of Civil Procedure, or Rule 9024 of the Federal Rules of Bankruptcy Procedure or other analogous rules of state courts governing procedures in cases before other courts may be filed with respect to such order or judgment shall not render such order or judgment not to be a Final Order.

**1.42.** <u>Foundation</u> means the River Terrace Estates Foundation, an Indiana not-for-profit corporation and an affiliate of the Debtor.

**1.43.** <u>Impaired</u> means any Claim or Interest impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.44.** <u>Indenture Trustee</u> shall mean The Bank of New York Trust Company, in its capacity as indenture trustee for the Series 2001 Bonds and in its capacity as Master Indenture Trustee, and upon the Sale Period Expiration Date, for the Series 2014 Bonds.

**1.45.** <u>Insurance Policies</u> means, collectively, all of the Debtor's insurance policies.

**1.46.** <u>Minimum Bid</u> has the meaning set out in <u>Section 5.1.1</u>.

**1.47.** <u>New Foundation Note</u> means the note to be issued to the Foundation for repayment of the DIP Loan and Exit Financing Facility.

**1.48.** <u>Operating Assets</u> means those Assets used by the Debtor in the day-to-day operation of the Property, including tangible personal property, contracts, leases, trade names, transferable licenses and records, and accounts receivable; <u>provided, however</u>, Operating Assets expressly exclude all Cash, Causes of Action, the Debtor's attorney-client privilege, the Debtor's nominal membership interests in the Alzheimer's Disease Foundation, Inc. and the Foundation, and any other property that may be excluded pursuant to the Bidder's Asset Purchase Agreement.

**1.49.** <u>Ordinary Business Claims</u> shall have the meaning set out in Section 9.3.

**1.50.** <u>Plan</u> means this chapter 11 plan of reorganization, including the exhibits, schedules appendices, all supplements, and the Plan Supplements, all either in their present form or as may be altered as amended from time to time by the Debtor, and whether filed herewith or with the Disclosure Statement.

**1.51.** <u>Plan Sale</u> shall mean a sale of the Community pursuant to this Plan, as proposed in the alternate treatment for the Series 2001 Bond Claim.

**1.52.** <u>Plan Supplement</u> means a supplement(s) to this Plan which shall be filed with the Bankruptcy Court not less than twenty-one (21) days prior to the Confirmation Hearing, as such documents and exhibits may be altered, amended, modified and supplemented by the Debtor.

**1.53.**    <u>Professional Fees</u> means the Allowed interim and final Professional Fees of Chapter 11 Professionals.

**1.54.**    <u>Priority Claim</u> means Claims under sections 507(a)(3) through section 507(a)(7) of the Bankruptcy Code.

**1.55.**    <u>Property</u> means that certain real property and the improvements thereon located at 400 Caylar Boulevard, Wells County, Bluffton, Indiana 46714, on which the Debtor operates a continuing care retirement facility consisting of 52 independent living units, 41 assisted living units, 14 memory support units, and 30 skilled nursing beds.

**1.56.**    <u>Proponent</u> means the Debtor.

**1.57.**    <u>Rejection Claim</u> means any Claim arising out of the rejection of a lease or executory contract pursuant to section 365 of the Bankruptcy Code.

**1.58.**    <u>Reinstated</u> means leaving unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder thereof, other than (i) delays or defaults conditioned upon or resulting directly as a result of this Bankruptcy case, (ii) acceleration of such Claim or Interest, and (iii) provisions disregarded by Section 365 that relate to restrictions on assignment or termination, with rights related to subsections (i), (ii), and (iii) being disregarded.

**1.59.**    <u>Released Parties</u> means the Debtor, the Foundation and each of the current officers, agents, Chapter 11 Professionals, advisors of the Debtor and the Foundation.

**1.60.**    <u>Reorganization Case</u> means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Filing Date.

**1.61.**    <u>Reorganized Debtor</u> means the Debtor, subsequent to the Effective Date of this Plan.

**1.62.**    <u>Repayment Plan</u> means the restructuring to occur through issuance of the Series 2014 Bonds in the event there is no Plan Sale, as proposed in the alternate treatment for the Series 2001 Bond Claim.

**1.63.**    <u>Residency Agreement</u> means a residency agreement, care agreement, or entrance fee deposit escrow agreement,  between the Debtor and a Resident for which obligations are still owed on either side, but does not include any tort claims by a resident.

**1.64.**    <u>Resident</u> means a current or former resident of the Property with a Residency Agreement.

**1.65.**    Resident Claim means the claims of a Resident on account of a Residency Agreement or for *de minimus* cash deposits held by the Debtor for Residents for Resident activities at the Property, but excludes any tort or professional liability claims against the Debtor.

**1.66.**    Retained Causes of Action means all Causes of Action, including but not limited to Causes of Action filed as part of the Plan Supplement, which the Debtor or its estate may hold against any Person.

**1.67.**    Sale Expenses shall have the meaning set out in Section 3.4(a)(ii).

**1.68.**    Sale Period Expiration Date means the earlier of (i) one Business Day after the Bid Date in the event that no conforming Bids are received (subject to extension for any time necessary for the Reorganized Debtor to determine whether a Bid is conforming or not), (ii) failure of a Plan Sale to close within Forty-Two (42) days following the Effective Date, or (iii) the day of the closing of a Plan Sale.

**1.69.**    Sale Proceeds shall have the meaning set out in Section 3.4(a)(ii).

**1.70.**    Series 2001 Bond Collateral means all now existing or after- acquired collateral for the Series 2001 Bonds that are described in the Series 2001 Bond Documents to the same priority, validity, and extent as they existed on the Filing Date.

**1.71.**    Series 2001 Bond Documents means all of those documents, agreements and instruments evidencing and securing the Series 2001 Bonds and the Series 2001 Bond Claim.

**1.72.**    Series 2001 Bond Lien means the liens, claims, and encumbrances of the Series 2001 Bonds on the Series 2001 Bond Collateral.

**1.73.**    Series 2001 Bonds means the 2001 City of Bluffton, Indiana Revenue Bonds in the current outstanding principal amount of $14,000,000.00, and which were issued in the original principal amount of $15,985,000 as evidenced by (i) $9,795,000 in Series 2001A fixed rate bonds with an average interest rate of 6.67% and final maturity in 2027, (ii) $3,490,000 in Series 2001B-1 EXTRAS with an interest rate of 7.00% beginning May 15, 2013 and ending May 14, 2014 and a final maturity in 2031 and (iii) $2,700,000 in Series 2001 B-2 EXTRAS with an interest rate of 7.00% beginning in May 15, 2013 and ending May 14, 2014 and a final maturity in 2032.

**1.74.**    Series 2014 Bond Documents means all of those documents, agreements and instruments evidencing and securing the Series 2014 Bonds, including to the extent expedient, the existing Master Indenture for the Series 2001 Bonds and such collateral documents as may remain in place.

**1.75.** <u>Series 2014 Bond Lien</u> means such liens, charges, and encumbrances necessary to provide the Series 2014 Bonds with security substantially the same as that of the Series 2001 Bond Lien.

**1.76.** <u>Series 2014 Bonds</u> means those certain bonds to be issued by the City of Bluffton, Indiana in the original principal amount of $7.5 million pursuant to the Series 2014 Bond Documents, in exchange for the Series 2001 Bonds.

**1.77.** <u>Unsecured Claim</u> means any Claim against the Debtor other than an Administrative Claim, DIP Claim, Priority Claim, the Series 2001 Bond Claim, Other Secured Claims, Resident Claim, and Foundation Claim.

**1.78.** <u>Voting Agent</u> means Globic Advisors or such other voting agent as may be approved by the Bankruptcy Court.

**Interpretation**. Unless the context requires otherwise, each term stated in either the singular or the plural will include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, the feminine and the neuter.  Unless the context requires otherwise, the following words and phrases will have the meanings set forth below when used in the initially-capitalized form in this Plan. An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.  The words "in this Plan", "this Plan", "hereto", "hereof," "herein," or "hereunder" and other words of similar import, unless specifically stated otherwise, refer to the entirety of this Plan, and not to a particular Section of this Plan.  The words "Article," "Section," "subsection," "clause" or "sentence" refer to particular provisions of this Plan and not to the entirety thereof. The word "including" (and with correlative meaning, the word "include") means including, without limiting or restricting the generality of any description preceding the word "including" or "include," and shall mean "including, but not limited to."  The use of the word "any" shall mean "any and all," and the use of the word "all" shall also mean "any and all."  The words "shall" and "will" are used interchangeably and have the same meaning.

**Exhibits**.  Exhibit P-1 is the amortization schedule for the Series 2014 Bonds.

Exhibit P-2 is the Plan Supplement that shall be filed no less than twenty-one (21) days prior to the Confirmation Hearing and shall include, among other things: (i) a list of cure amounts for executory contracts (other than Residency Agreements) being assumed (in addition to those noted in this plan), (ii) forms of the Series 2014 Bond Documents, (iii) the form of Bidder's Asset Purchase Agreement, and (iv) a list of retained causes of action.  The Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Holders of Claims may also obtain a copy of the Plan Supplement, once filed, by calling the Voting Agent at **212-227-9699** or by a written request sent to the following address:

GLOBIC ADVISORS
880 THIRD AVENUE, 12TH FLOOR
NEW YORK, NEW YORK  10022

**Time Periods**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

## ARTICLE II
## CLASSIFICATION OF CLAIMS

Claims are divided into the following Classes under this Plan:

**2.1.**    Class 1:  Administrative Claims.  Class 1 consists of all Administrative Claims that become Allowed Claims, including, Allowed Claims of the Professional Fees of  Chapter 11 Professionals and the fees payable to the United States Trustee pursuant to 28 U.S.C. 1930(a)(6). Class 1 also includes all tax claims of governmental units incurred after the Filing Date, all advances to, loans to, or debts incurred by, the Debtor after the Filing Date in the ordinary course of the Debtor's business.

**2.2.**    Class 2: DIP Claim.  Class 2 consists of the debtor in possession financing claim of the Foundation (the "DIP Loan") in the amount of Six-Hundred-Thousand Dollars ($600,000), which debtor-in-possession financing facility will be approved by the Bankruptcy Court in the Reorganization Case.

**2.3.**    Class 3: Priority Claims.  Class 3 consists of all Claims under section 507(a)(3) through Section 507(a)(8), if any, that become Allowed Claims.

**2.4.**    Class 4: Series 2001 Bond Claim.  Class 4 consists of the Series 2001 Bond Claim.

**2.5.**    Class 5: Other Secured Claims.  Class 5 consists of secured claims against the Debtor not otherwise classified, if any, that become Allowed Claims.

**2.6.**    Class 6:  Resident Claims.  Class 6 consists of any and all Resident Claims.

**2.7.**    Class 7:  Foundation Claim.  Class 7 consists of the pre-petition general unsecured claim of the Foundation.

**2.8.**    Class 8:  Unsecured Claims.  Class 8 consists of all Unsecured Claims, except the unsecured claim of the Foundation, and Class 8 shall include any tort or professional liability claims against the Debtor.

# ARTICLE III
# <u>TREATMENT OF CLAIMS</u>

The following treatment will be accorded to Claims in Classes 1 through Class 8.

**3.1.**    <u>Class 1 (Non-Voting):  Administrative Claims</u>.

(i)    The Chapter 11 Professionals holding Allowed Class 1 Claims will be paid (a) in cash, in full, on the later of the Effective Date and the Date of Allowance; or (b) in such amounts and on such terms as agreed upon by the Class 1 Claimant and the Debtor.  The fees of the United States Trustee will be paid in accordance with 28 U.S.C. 1930(a)(6).

(ii)    Any Administrative Claim for any operating expense incurred by, or an advance or loan to the Debtor, in the ordinary course of the operations of the Business of the Debtor, will be paid in full and in cash in the ordinary course of the Debtor's business.

(iii)    Any taxes incurred after the Filing Date will be paid in full on the later of (i)  the Effective Date, (ii) the Date of Allowance, and (iii) when ordinarily due and payable.

**3.2.**    <u>Class 2 (Non-Voting):  DIP Claim</u>.  Unless the Foundation and the Debtor agree to a less favorable treatment in writing, the DIP Claim will be repaid (i) in the event of a Repayment Plan, to the extent of excess cash flow under the New Foundation Note, and (ii)  in the event of a Plan Sale, from the proceeds of the Sale of the Property, in an amount sufficient such that the Foundation holds a cash balance of $750,000 after the repayment.

(a)    Repayment Plan.  In the event there is no Plan Sale, then on the seventh (7th) day following the Sale Period Expiration Date, the Foundation will receive from the Reorganized Debtor the New Foundation Note.  The New Foundation Note will be non-interest bearing and will provide that, so long as the Reorganized Debtor is in compliance with the 1.20 Debt Service Coverage Ratio Requirement (all as defined in the Series 2014 Bond Documents), the Reorganized Debtor shall make annual principal payments to the Foundation under the New Foundation Note on the anniversary of the Effective Date in an amount equal to 33% of the Reorganized Debtor's Excess Days Cash On Hand (as defined in the Series 2014 Bond Documents).  The New Foundation Note shall also provide for a final balloon payment to be made on the New Foundation Note on the anniversary of the Effective Date in 2048.  The New Foundation Note shall be unsecured.  Until the issuance of the New Foundation Note, the DIP Loan will continue to be secured by and perfected against the DIP Loan Collateral, without the need for the filing of any security documents, which DIP Lien will be extinguished upon issuance of the New Foundation Note.

(b)    Plan Sale.  In the event of a Plan Sale, then the Foundation will contribute and waive the balance of the DIP Claim as part of this Plan, above the amount necessary to for the Foundation to have a cash balance of $750,000.  The DIP Loan Collateral will remain as

collateral for the DIP Loan until consummation of the Plan Sale, at which time the DIP Lien will attach to the net proceeds of thereof.

(c)  Carve-Outs. Notwithstanding the foregoing, the treatment of the DIP Claim hereunder shall not affect the validity of any carve-outs for Allowed Professional Fees under the DIP order, which carve-outs shall remain in place.

**3.3.**  <u>Class 3:  Priority Claims.</u>

(a)  Treatment.  Unless the Holder of such claim and the Debtor agree to less favorable treatment, each holder of an Allowed Priority Claim, if any, shall have its claim Reinstated and paid by the Debtor in the ordinary course of business when ordinarily due and payable.

(b)  Impairment.  Class 3 is Unimpaired by this Plan.  The Class 3 Claimants will be deemed to accept this Plan, and will not have the right to vote to accept or reject this Plan.

**3.4.**  <u>Class 4: Series 2001 Bond Claim.</u>

(a)  Treatment**.**  This Plan proposes that each holder of a Class 4 Series 2001 Bond will be paid, in full satisfaction of such Allowed Class 4 Series 2001 Bond Claim, by one of the following alternative treatments:

(i)  Repayment Plan.  In the event that there is no Plan Sale, then on the seventh (7th) day after the Sale Period Expiration Date, the holders of the Class 4 Series 2001 Bond Claim will receive the Series 2014 Bonds in exchange for and in full satisfaction of their rights under the Series 2001 Bond Documents.  The Series 2014 Bonds will provide for (i) principal in the amount of Seven-Million-Five-Hundred-Thousand Dollars ($7,500,000.00) in payments over time; (ii) interest-only payments at an annual rate of 5.0% through 2018; (iii) from 2019 - 2023, interest payments continuing at an annual rate of 5% and amortizing principal payments based on a 30-year amortization to create level annual debt service; and (iv) from 2024 through maturity, interest payments at an annual rate of 8.50% and principal payments based on a 25-year amortization to create level annual debt service. The payment schedule for the Class 4 Series 2001 Bond Claim is attached hereto as <u>Exhibit P-1</u>.

(1) As of the Petition Date, the total amount owing under the Series 2001 Bonds was $14,000,000 principal plus $953,930 interest through May 15, 2014.  Each holder of a Series 2001 Bond Claim shall be converted into a Series 2014 Bond at the following percentage of 53.6%, so that for each $5,000 of principal amount of such Series 2001 Bond, the holder will receive $2,680 in principal amount of Series 2014 Bonds.

(2) The Series 2014 Bonds will be secured in the same manner as the Series 2001 Bonds in all of the Series 2001 Bond Collateral, and until the issuance of the Series 2014 Bonds, the Series 2001 Bond Lien will remain in place.  The terms of the Series

2014 Bonds will be set out in the Series 2014 Bond Documents which will be provided in the Plan Supplement, and will include (a) the requirement of distribution of the proceeds of the Series 2014 Bonds ratably to all holders, (b) continuation of the Debt Service Reserve Fund (and any other funds under the Series 2001 Bond Documents still in place presently) but only to the extent of any funds located therein and not to exceed maximum annual debt service in the years 2019 – 2023 with any excess being used to pay interest in 2015, (c) the right to prepayment at any time without premium or penalty, (d) the right of the Community to enter into one or more bed lease agreements with hospitals without the need for additional consent, subject to the lien of the Series 2014 Bonds, and (e) voting provisions so that any future amendments to the bond documents may be handled by votes of a majority in number and more than $2/3^{rd}$'s in amount of those voting subject to any reissuance requirements. The financial covenants for the Series 2014 Bonds will remain generally the same as for the Series 2001 Bonds with the exception of the Liquidity Covenant which will be reduced from 200 Days Cash on Hand to 40 Days Cash on Hand in 2015, 50 Days Cash on Hand in 2016, and 60 Days Cash on Hand in 2017 and each year thereafter.

(3) No distributions shall be made to the holders of the Class 4 Series 2001 Bond Claim for the balance of any amounts owing under the Series 2001 Bonds other than the exchange for the Series 2014 Bonds.

(ii) Plan Sale. In the event of a Plan Sale, then upon the consummation of the Plan Sale, the holders of the Class 4 Series 2001 Bond Claim will be paid all of Debtor's Cash plus the net cash proceeds (collectively, the "Sale Proceeds") from the sale of the Community, after payment or escrow (as necessary) for (1) all costs, fees and expenses associated with the Plan Sale of the Community or required to be paid hereunder, including without limitation any and all professional, broker, United States Trustee, or related fees and expenses, whether advanced by the Foundation or by the Reorganized Debtor post-Effective Date (collectively, the "Sale Expenses"), (2) after repayment of the Sale Expenses, the Class 2 DIP Claim, in an amount sufficient to ensure that all times from and after the Effective Date the Foundation is holding a cash balance of $750,000, (3) all taxes associated with the Community owed by the Debtor or Reorganized Debtor, including but not limited to, any and all real estate and transfer taxes (if any), and (4) Twenty-Five-Thousand Dollars ($25,000.00) for the Reorganized Debtor's winddown expenses. The Class 4 Series 2001 Bond Claim will also receive any amounts in the Debt Service Reserve Fund (and any other funds under the Series 2001 Bond Documents). The Sale Proceeds and amounts in the Debt Service Reserve Fund (and any other funds under the Series 2001 Bond Documents) will be distributed by the Indenture Trustee to the holders pursuant to and in order of any priorities established by the Series 2001 Bond Documents. In the likely event that the proceeds from the sale of the Property are not sufficient to pay the Class 4 Series 2001 Bond Claim in full, the holders of the Class 4 Series 2001 Bond Claim shall not receive any other distributions under this Plan or from the Debtor or the Reorganized Debtor, including but not limited to any amounts that may be due and owing for accrued and unpaid interest. The Series 2001 Bond Collateral will remain as collateral for the Series 2001 Bond Claim until consummation of the Plan Sale, at which time the Series 2001 Bond Lien will attach to the net proceeds of thereof.

13

(b)  Impairment.  The Class 4 Claim is impaired.  Therefore, the beneficial holders of the Class 4 Series 2001 Bonds shall be entitled to vote to accept or reject this Plan.

**3.5.**  Class 5:  Other Secured Claims.

(a)  Treatment.  The Allowed Class 5 Other Secured Claims shall be Reinstated and shall be paid by the Reorganized Debtor according to the terms and in the ordinary course of the Debtor and are to be rendered unimpaired pursuant to section 1124(2) of the Bankruptcy Code.

(b)  Impairment.  The Class 5 Other Secured Claims are not Impaired.  Therefore, the Class 5 Claimants will be deemed to have accepted this Plan, and will not have the right to vote to accept or reject this Plan.

**3.6.**  Class 6:  Resident Claims.

(a)  Treatment.  Each Allowed Class 6 Resident Claim shall be Reinstated on the Effective Date and shall be paid in the ordinary course of business of the Debtor when such claims become due according to their terms.  Any executory contract between the Debtor and a holder of a Class 6 Resident Claim shall be assumed on the Effective Date.

(b)  Impairment.  The Class 6 Resident Claims are not Impaired.  Therefore, the Class 6 Claimants will be deemed to have accepted this Plan, and will not have the right to vote to accept or reject this Plan.

**3.7.**  Class 7:  Unsecured Claim of the Foundation.

(a)  Treatment.  As of the Petition Date, the Debtor was indebted to the Foundation in the amount of approximately $5.5 million.  In the event of a Plan Sale, the Class 7 Unsecured Claim of the Foundation shall be entitled to any proceeds remaining after payment of the Class 1, 2, 3, 4, 5, 6 and 8 Claims in full. If there is no sale of the Property, then the Class 7 General Unsecured Claim of the Foundation shall not receive any distribution under this Plan.

(b)  Impairment.  The Class 7 Claim is impaired.  The holder of the Class 7 Claim shall be entitled to vote to accept or reject this Plan.  However, as the Foundation is an insider affiliate of the Debtor, its vote shall not be counted for purposes of Section 1129 of the Bankruptcy Code.

**3.8.**  Class 8:  Unsecured Claims.

(a)  Treatment.  Unless the Holder of such Claim and the Debtor agree to less favorable treatment, the Allowed Class 8 Unsecured Claims shall be paid in equal installments over six (6) months beginning on the seventh (7th) day following the Sale Period Expiration Date without interest (and to the extent any Holder of a Class 8 claim asserts a right to interest, the portion for

14

interest will be automatically disallowed unless specifically ordered by the Court for that claim). For any claims that are covered by insurance, such as tort or professional liability claims against the Debtor, such claims will first be satisfied from any insurance proceeds, with any remainder to be paid over a six (6) month period without interest.

(b)    Impairment. Class 8 Claims are Impaired.  The Class 8 Claimants are entitled to vote to accept or reject this Plan.

## ARTICLE IV
## IMPAIRMENT OF CLASSES

Classes 1, 2, 3, 5, 6 are not Impaired under this Plan and therefore are deemed to accept this Plan.  Classes 4, 7, and 8 are Impaired, and may vote to accept or reject this Plan. However, the Foundation is an "insider" of the Debtor, as said term is defined in the Bankruptcy Code, and its vote shall not be counted for purposes of Section 1129 of the Bankruptcy Code.

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF THIS PLAN

5.1    Implementation.  From and after the Effective Date, the Reorganized Debtor shall continue to exist as a nonprofit corporation in accordance with applicable Indiana law pursuant to its organizational documents in effect prior to the Effective Date.  All property of the Debtor, including all claims, rights, and causes of action and any property acquired by the Debtor under or in connection with this Plan, shall remain in the Estate until the Sale Period Expiration Date, at which time all property shall re-vest in the Reorganized Debtor free and clear of all Claims, liens, charges, encumbrances, and Interests, except for the liens, claims, encumbrances, and interests of the Series 2001 Bonds against the Series 2001 Bond Collateral; provided, however, in the event of a Plan Sale, then the property re-vesting in the Reorganized Debtor shall only be property which was not sold in the Plan Sale or yet paid to the bondholders.  On and after the Effective Date, the Reorganized Debtor may operate the Business in the ordinary course subject only to this Plan and section 363 the Bankruptcy Code, and following the Sale Period Expiration Date,  may use, acquire, and dispose of property and compromise or settle any Claims without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.  Without limiting the foregoing, any Plan Sale of the Property by the Reorganized Debtor which occurs after the Effective Date shall be a sale pursuant to the provisions of the Bankruptcy Code, including but not limited to, Section 363, Section 365 and Section 1146.  Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

5.2    Repayment Plan.  On the Effective Date, the Debtor shall enter into the Series 2014 Bond Documents and the New Foundation Note, all of which will be held in escrow pending the Sale Period Expiration Date.  If there is no Plan Sale, then the escrowed documents will effectuate

15

the Debtor's financial restructuring and provide the Reorganized Debtor with a viable capital structure going forward in order to make payments to the bondholders and the Reorganized Debtor's creditors, and will be released from escrow and take effect on the seventh (7th) day following the Sale Period Expiration Date. All of the liens, claims, interests and mortgages securing the Series 2001 Bonds and the DIP Loan shall stay in place from the Effective Date until the Sale Period Expiration Date and the release from escrow of the Series 2014 Bond Documents and the New Foundation Note, at which time the Series 2014 Bond Documents and the New Foundation Note shall take effect. The Series 2014 Bond Documents shall be secured by liens, claims, and mortgages pursuant thereto which shall be in substantially the same scope and form as those which secured the Series 2001 Bond Documents. The New Foundation Note will be unsecured, and the Foundation will advance Exit Financing in an amount of up to $500,000 to the Reorganized Debtor from the available funds of the Foundation for the operating needs of the Reorganized Debtor, with the repayment of the Exit Financing to be incorporated into the New Foundation Note on the same terms and conditions.

      **5.3**    Plan Sale. Beginning with the filing of the Bankruptcy, the Debtor and Reorganized Debtor will market the Property through a broker, and such marketing will continue through the Bid Date. Any prospective buyers must submit a binding, conforming bid to the Reorganized Debtor so that it is received by 5:00 p.m. prevailing Eastern Time on the Bid Date and the sale must be consummated prior to the Sale Period Expiration Date. In the event that the Reorganized Debtor receives only one conforming bid, the Reorganized Debtor will proceed with the consummation of a Plan Sale of the Community to the prospective buyer prior to the Sale Period Expiration Date. In the event that the Reorganized Debtor receives more than one conforming bid, the Reorganized Debtor will hold an auction to determine the winning Bidder within fourteen (14) days after the Bid Date and held at the offices of counsel for the Reorganized Debtor, 201 North Illinois Street, Suite 1900, Indianapolis, Indiana 46204 pursuant to a notice provided by the Reorganized Debtor to all Bidders and the Indenture Trustee. The Reorganized Debtor and the winning Bidder with the highest and best Bid submitted at the conclusion of the auction will proceed with the consummation of a Plan Sale of the Community prior to the Sale Period Expiration Date.

      **5.3.1**    Notwithstanding the occurrence of the Effective Date, the Assets shall remain property of the estate until the Sale Period Expiration Date, and therefore (i) the Plan Sale of the Community of the Debtor shall be considered a sale pursuant to the terms and conditions of this Plan, (ii) the Plan Sale of the Community of the Debtor shall be entitled to all of the protections under Section 1146 of the Bankruptcy Code, (iii) the Plan Sale of the Community of the Debtor shall be free and clear of any and all liens, claims, encumbrances, mortgages, interests, causes of action pursuant to section 363 of the Bankruptcy Code and applicable law, and (iv) any Bidder of the Community of the Debtor shall be entitled to all of the protections afforded under section 363 of the Bankruptcy Code, including but not limited to the protections afforded under section 363 (m) of the Bankruptcy Code. The Debtor and Reorganized Debtor shall retain a broker to market the Community of the Debtor and to solicit Bids. Subject to a potential Bidder entering into a confidentiality agreement

satisfactory to the Debtor in its business judgment, the Debtor will afford any potential Bidder the opportunity to conduct a reasonable due diligence review, provided that (i) the due diligence receive shall not be disruptive to the daily operations of the Community, in Debtor's reasonable discretion, (ii) Debtor shall not be obligated to furnish any due diligence information after the Bid Date, and (iii) Debtor intends to use reasonable efforts to provide to all potential Bidders information in connection with the proposed sale, but the failure to deliver any information to any potential Bidder shall not affect the validity, effectiveness or finality of this sale process through the Plan.

5.3.2   The minimum bid (the "Minimum Bid") required to be submitted by a Bidder to acquire the Community of the Reorganized Debtor shall be: (i) a cash purchase price in an amount of not less than Six-Million-Dollars ($6,000,000.00) to be paid at closing without hold-back, escrow, or earn-out (the "Base Cash Price");  (ii) assumption by the Bidder of the obligations owing by the Reorganized Debtor under this Plan to the holders of the Class 6 Resident Claims; (iii) assumption by the Bidder of any obligations Reinstated under this Plan, (iv) acceptance of assignment of any contracts or leases assumed under this Plan (with the exception of Insurance Policies, at the Reorganized Debtor's option in its sole discretion), and payment or reimbursement of all cure payments required to be paid or previously paid; (iv) assumption of the Class 8 Unsecured Claims and any unpaid ordinary course of business operating expenses of the Reorganized Debtor incurred by the Reorganized Debtor from and after the Effective Date that are owing at the closing of the Plan Sale; and (v) additional cash in an amount equal to 90% of the accounts receivable outstanding on the Reorganized Debtor's books (the "Accounts Receivable Price") as of three (3) Business days before closing of the Plan Sale, net of Debtor's reasonable reductions for bad debt.

5.3.3   The Reorganized Debtor may consider any conforming bid from a financially-capable Bidder deemed qualified by the Reorganized Debtor, in its reasonable business judgment and sole discretion, to acquire the Community of the Reorganized Debtor.  To be conforming, a Bid shall (i) be a Minimum Bid, (ii) not be subject to a financing or due diligence contingencies; (iii) not be subject to contingencies to the obligation of the Bidder to close the transaction contemplated by the Offer other than certain regulatory approvals and a material adverse change in the business of the Reorganized Debtor; (iv) not require post-closing actions of the Reorganized Debtor except at the winning Bidder's expense, and not require post-closing actions more than twenty (20) days following closing except to the extent that the winning Bidder is appointed as the Reorganized Debtor's agent for limited purposes, (v) have evidence of the Bidder's ability to consummate the transaction contemplated by the Bid, which must be acceptable to the Reorganized Debtor in its reasonable discretion, (vi) be accompanied by a deposit (the "Deposit") in the amount 10% of the Base Cash Price, (vii) include the Bidder's Asset Purchase Agreement (the form

of which shall be prepared by the Reorganized Debtor and filed with the Plan Supplement), marked to show any changes (which shall not be less favorable to the Debtor, in Debtor's reasonable discretion), and in clean form with all exhibits and schedules, (viii) be subject to closing upon no more than 14 days time, with regulatory approvals to handled post-closing to the extent necessary, and (ix) include an acknowledgement and representation that the bidder has had an opportunity to conduct any and all required due diligence regarding the Community prior to making its offer; has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Community in making its bid, did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Community or the completeness of any information provided in connection therewith or with the auction, except as expressly stated in the Bidder's Asset Purchase Agreement, and is not entitled to any expense reimbursement, break-up fee, or similar type of payment nor a right to seek a claim for substantial contribution in connection with its bid.  A single Bidder may not submit multiple Bids on the Bid Deadline.

**5.3.4**    The Deposit shall be held by the Reorganized Debtor in escrow, in a separate bank account. The Deposit of any Bidder submitting an Offer shall be held as security for the full and faithful performance by the Bidder of all of its obligations and commitments under the Bid.  As to any Bidder that is not the winning Bidder at any auction, such Bidder shall be a back-up Bidder and Debtor will continue to hold the Deposit of such Bidder until the earlier of a closing with the winning Bidder or the Sale Period Expiration Date. If a winning Bidder fails to consummate an approved sale of the Community because of a breach or failure to perform on the part of such winning Bidder, such winning Bidder's Deposit will be forfeited to the Debtor as provided for in the Bidder's Asset Purchase Agreement.

**5.3.5**    The Reorganized Debtor shall have the right to evaluate any Bid, to make inquiries concerning the obligations and representations contained therein, including, without limitation, the right to make inquiries of financial institutions provided as evidence of the Bidder's ability to close the transaction contemplated by the Bid, and to determine whether the Bidder is capable of consummating the transaction contemplated by the Bid.  Any Bidder submitting a conforming bid and meeting the requirements set out above and in the Plan Supplement will be allowed to participate in the auction. Any disputes regarding the conformity of any Bid, or regarding the highest and best bid at any auction, shall be submitted to the Bankruptcy Court for resolution if necessary.  The Bankruptcy Court may also enter a sale order if required by the parties.  All Bidders shall be deemed to have consented to these procedures and to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the auction, the Plan and the construction and enforcement of the Bidder's Asset Purchase Agreement.

5.3.6    If a Plan Sale closes, the proceeds shall be paid so that the Class 4 Series Bond Claim is treated in accordance with the provisions of Section 3.4 (a)(ii) of this Plan.   If no Bid is received by the Bid Date, or if no Plan Sale closed by the Sale Period Expiration Date, there shall be no auction and no Plan Sale and the Class 4 Series 2001 Bond Claim shall be treated in accordance with the provisions of Section 3.4 (a)(i) of this Plan pursuant to the Repayment Plan.

**5.4**    <u>Cancellation of Lien, Encumbrances and Charges.</u> On the Effective Date, any and all liens, indentures, security interests, encumbrances and charges against the Community and the Assets shall be released and cancelled, except for (i) the Series 2001 Bond Lien, or, upon exchange, the Series 2014 Bond Lien, (ii) the DIP Lien, (iii) any lien for Class 5 Other Secured Claims; and (iv) any carve-outs.

**5.5**    <u>Authorization to Execute and Deliver Restructuring Documents.</u>  On the Effective Date, without any requirement of further action of the Debtor or Reorganized Debtor, the Reorganized Debtor shall be authorized and directed to execute and deliver into escrow the Series 2014 Bond Documents (including all mortgages, security documents and other related agreements, documents or instruments to be executed or delivered in connection therewith and constituting part thereof), and the New Foundation Note.

5.5.1    Upon the seventh (7th) day following the Sale Period Expiration Date, if there has been no Plan Sale, then the foregoing documents shall be released from escrow and shall constitute the legal, valid and binding obligations of the Reorganized Debtor, enforceable in accordance with their respective terms.    The liens securing the obligations of the Reorganized Debtor under the Series 2014 Bond Documents shall constitute legal, valid, perfected, non-avoidable and binding liens on, and security interests in, the assets of the Reorganized Debtor to the extent set forth in the Series 2014 Bond Documents.   No obligation, payment, transfer or grant of security under the Restructuring Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law or subject to any defense, reduction, recoupment, setoff or counterclaim. The Reorganized Debtor shall be authorized and directed to make all filings and recordings, and to obtain all governmental approvals and consents necessary or desirable to establish and further evidence the perfection of such liens and security interests under the provisions or any applicable federal, state, provincial or other law (whether domestic or foreign) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

5.5.2    In the event of a Plan Sale, the Series 2014 Bond Documents and the New Foundation Note shall not be released from escrow, and instead shall be cancelled and never take effect.

**5.6**    Sources of Cash for Plan Distributions.    All cash and/or funds necessary for Reorganized Debtor to make payments pursuant to this Plan shall be obtained from Cash of the Debtor, net proceeds from the Sale of the Community in the event of a Plan Sale, the operations of the Reorganized Debtor, the contributions and/or loans and/or advances of the Foundation, and deposits and payments of the Residents held by the Debtor, as may be permitted under applicable law.  Further, the Debt Service Reserve Fund (and any other funds remaining under the Series 2001 Bonds) shall be used solely for payment of, and in accordance with, the Series 2001 Bonds and the Series 2014 Bonds with which they are replaced.

**5.7**    Corporate Dissolution Following Consummation of a Sale.  Following consummation of a Plan Sale as provided herein, upon satisfaction by the Debtor of its obligations under the Bidder Asset Purchase Agreement, the Debtor shall have no further duties and shall be deemed dissolved and terminated immediately upon the filing of Articles of Dissolution, without the need for any further actions or approvals by any party or authority, and membership interests in any affiliate or subsidiary non-profit entities shall be deemed surrendered and extinguished to such entities so that they may subsequently become non-member non-profit entities.

# ARTICLE VI
# PROCEDURE FOR RESOLVING DISPUTED CLAIMS, ADMINISTRATIVE CLAIMS, AND IN RESPECT OF DISTRIBUTIONS

**6.1.**    Objection Deadline.  As soon as practicable, but in no event later than twenty-eight (28) days after the Effective Date, unless extended by the Reorganized Debtor in its sole discretion by the filing of a notice with the Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

**6.2.**    Authority to Oppose Claims.  On and after the Effective Date, the objecting to, disputing, defending against, and otherwise opposing, and the making, asserting, filing, litigation, settlement or withdrawal of all objections to, Claims shall be the exclusive responsibility of the Reorganized Debtor.  The Reorganized Debtor shall have the power, without notice to or approval of the Bankruptcy Court, in the exercise of its business judgment to preserve, fail to preserve, settle, compromise or litigate any claim or cause of action (except for any claims or causes of action released or to be released pursuant to or in connection with this Plan) before any applicable or appropriate court, panel, agency or tribunal (including, where appropriate, the Bankruptcy Court) that the Debtor may have against any Person based on acts, omissions or events prior to the Effective Date.

**6.3.**    No Distributions Pending Allowance.  Notwithstanding any other provision in this Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Claim becomes an Allowed Claim.

**6.4.**    Surrender of Cancelled Securities. All Series 2001 Bonds will be deemed cancelled automatically and of no further force and effect upon the issuance of the Series 2014 Bonds.  The holders of the Series 2001 Bonds shall tender such instruments, securities, or other document to the Indenture Trustee, who, upon receipt, shall cancel all instruments and securities evidencing the Series 2001 Bonds and return them to the Reorganized Debtor.

**6.5.**    Determination by Bankruptcy Court.  The amount of any Disputed Claim, and the rights of the holder of such Claim, if any, to payment in respect thereof shall be determined by the Bankruptcy Court, unless it shall have sooner become an Allowed Claim.

**6.6.**    Administrative Claims Bar Date and Objections.  All Administrative Claims required to be filed shall be filed by the Administrative Claims Bar Date, and if not filed by such time, shall be deemed to be forever waived and barred.  Any objections to Administrative Claims must be filed within fourteen (14) days after the Administrative Claims Bar Date in order to be timely, and otherwise such objections shall be forever waived and barred.  The Reorganized Debtor, in its sole discretion, may extend the Administrative Claims Bar Date and/or the objection deadline in its sole discretion by the filing of a notice with the Court.

**6.7.**    Treatment of Disputed Claims.  Cash shall be distributed by the Debtor to a holder of a Disputed Administrative Expense Claim or Disputed Claim when, and to the extent that, such Disputed Administrative Expense Claim or Disputed Claim becomes an Allowed Administrative Expense Claim or Allowed Claim pursuant to a Final Order.  Such distribution shall be made in accordance with this Plan to the holder of such Claim based upon the amount in which such Disputed Administrative Expense Claim or Disputed Claim becomes an Allowed Administrative Expense Claim or Allowed Claim, as the case may be.

**6.8.**    Insurance Claims. For any claims that are covered by insurance, no distributions shall be made on account of Allowed Claims until the holder of such Allowed Claim has exhausted all remedies with respect to the Debtor's Insurance Policies.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, or approval of the Bankruptcy Court.

**6.9.**    Distributions. The Reorganized Debtor or its designee shall be the Disbursing Agent pursuant to this Plan.  Distributions with regard to the Class 4 Series 2001 Bond Claim shall be made by the Debtor to the Indenture Trustee, pursuant to, as appropriate, the terms of the Series 2001 Bond Documents or the Series 2014 Bond Documents. All distributions on account of the Series 2001 Bond Claim will be subject to any charging lien of the Indenture Trustee under the Series 2001 Bond Documents, and the Series 2014 Bond Documents shall contain provision for a similar charging lien.

**6.10.** <u>Unclaimed Distributions</u>. Other than Distributions for the Class 4 Series 2001 Bond Claim which shall be made via the Indenture Trustee, the Debtor shall pay Distributions to the last known address of any holder, pursuant to the address on any Proof of Claim filed or, if none, then the address on the Debtor's schedules filed in the Bankruptcy Case (and if redacted for privacy purposes, to the address used by the Debtor's Voting Agent on any protected matrix). Any Distributions that remain unclaimed (including uncashed or returned to Debtor) after one (1) year from their issuance shall become the property of the Reorganized Debtor, and the Claims with respect to which those Distributions are made shall be automatically cancelled, discharged, and forever barred.

**6.11.** <u>No Distributions in Excess of Allowed Claim</u>. Notwithstanding anything herein to the contrary, no holder of an Allowed Claim shall receive in respect of the Claim any Distribution in excess of the Allowed Amount of the Claim.

**6.12.** <u>Setoff and Recoupment</u>. The Reorganized Debtor may, but shall not be required to, set off against, or recoup from,  any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that the Debtor, the estate, or the Reorganized Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the estate, or the Reorganized Debtor of any claim or right to setoff or recoupment that nay of them may have against the holder of any Claim.

<div align="center">

**ARTICLE VII**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

</div>

**7.1.** <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.

(a)     <u>Assumption or Rejection of Executory Contracts</u>. As of the Effective Date, all executory contracts and unexpired leases that exist between any Debtor and any Entity, including but not limited to the Residency Contracts, are hereby assumed, except for any executory contract or unexpired lease (i) which has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date, or (ii) as to which a motion for approval of the rejection of such contract has been filed prior to and is pending on the Confirmation Date. Subject to the occurrence of the Effective Date, the rejection of any executory contract or unexpired lease pursuant to this Article shall be effective upon the earliest of the Confirmation Date, the date on which the Debtor notifies the non-debtor party to such contract or lease of the effectiveness of such rejection, and the date specified as the effective date of rejection in any order of the Bankruptcy Court.

(b)     <u>Approval of Assumption or Rejection of Leases and Contracts</u>. Entry of the Confirmation Order shall constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption or assumption and (upon a Plan Sale) assignment of the executory contracts and unexpired leases assumed pursuant to <u>Sections 7.1(a), (b) and (c)</u> hereof,

and (ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the terms of this Plan. Unless otherwise provided, the assumption of an executory contract or unexpired lease shall include all modifications, amendments, supplements, restatements or other agreements subservient or related thereto that in any manner affect such agreement, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan. Any executory contract or unexpired lease assumed as of the Effective Date shall continue to be subject to assignment pursuant to section 365 of the Bankruptcy Code in the event of a Plan Sale.

(c)    <u>Insurance Policies</u>. For the avoidance of doubt, the Debtor shall assume all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code as of the Effective Date. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption (and, if necessary in Debtor's discretion upon a Plan Sale, assignment) of each of the Insurance Policies.

(d)    <u>Medicare and Medicaid Provider Agreements</u>. For the avoidance of doubt, the Debtor shall assume its Medicare and Medicaid provider agreements and provider numbers as of the Effective Date. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption.

(e)    <u>Cure of Defaults</u>. All cure payments which may be required by section 365(b)(1) of the Bankruptcy Code under any executory contract or unexpired lease which is assumed under this Plan shall be made by the Debtor on the Effective Date or as soon as practicable thereafter. **All requests for cure payments by a party to such assumed contract or lease, and objections to the cure payment set out in the Plan Supplement, must be filed by the date for objections to Confirmation, unless such cure payments are agreed to by the Debtor.** In the event of a dispute regarding (i) the amount of any cure payment, (ii) the ability of the Debtor (or the winning Bidder in the event of a Plan Sale) to provide adequate assurance of future performance, or (iii) any other matter pertaining to assumption (other than matters conclusively determined by this Plan), the Debtor shall make such cure payments required by section 365(b)(1) of the Bankruptcy Code following the later of the Effective Date (or as soon as practicable thereafter) and the date of the entry of a Final Order resolving such dispute. Assumption of an executory contract or unexpired lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or non-monetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption (or assignment, in the event of a Plan Sale).

(f)    <u>Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to this Plan</u>. Claims arising out of the rejection of an executory contract or unexpired lease pursuant to this Plan must be filed with the Bankruptcy Court no later

23

than twenty-eight (28) days after entry of the Confirmation Order.  Any Claims not filed within such time will be forever barred from assertion against the Debtor, its estate, and its property.

(g)    Reservation of Rights.  Neither the inclusion or exclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor or the Reorganized Debtor that any such contract or lease is in fact an executory contract or unexpired lease, and the Debtor and Reorganized Debtor's rights shall be preserved to contest whether an obligation is an executory contract or unexpired lease.

## ARTICLE VIII
## DISCHARGE, RELEASES AND INJUNCTIONS

**8.1.**    Discharge. Except as otherwise specifically provided by this Plan on the Effective Date, the Debtor, its successors and assigns, and their respective assets and properties and the Assets will be discharged and released from any debt, charge, liability, encumbrance, security interest, lien, assignment, Claim, Interest, or other Cause of Action of any kind, nature or description (including, but not limited to, any claim of successor liability) that arose before the Confirmation Date, and any debt of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of claim is filed or is deemed filed, whether or not such Claim is Allowed, and whether or not the holder of such Claim has voted on this Plan (including, without limitation, any liabilities arising under environmental laws in respect of the Debtor or any of the Debtor's successors or assigns or their respective Assets or properties, which result, in whole or in part, from any condition, event, occurrence or happening prior to the Confirmation Date, whether or not known or unknown, discovered or undiscovered, asserted or unasserted, latent or patent, and regardless of whether any Claim was, is or could have been asserted for such liability), and upon such discharge and release, no such liabilities shall be obligations, liabilities, claims, liens or encumbrances against the Reorganized Debtor, the Property and the Assets, whether under the doctrine of successor liability or otherwise.

**8.2.**    Full Satisfaction. Furthermore, but in no way limiting the generality of the foregoing, except as otherwise specifically provided by this Plan, the Distributions and rights that are provided in this Plan will be in complete satisfaction, discharge and release, effective as of the Effective Date of (i) all Claims and Causes of Action against, liabilities of, liens on, charges, encumbrances, security interests, obligations of and interests and Interests in the Debtor, if any, the Assets, or the direct or indirect Assets and properties of the Debtor, whether known or unknown and (ii) all Causes of Action, whether known or unknown, either directly or derivatively through the Debtor or the successors and assigns of the Debtor based on the same subject matter as any Claim, Interest or any other interests, in each case, regardless of whether a proof of Claim or Interest was filed, whether or not Allowed, and whether or not the holder of the Claim or Interest has voted on this Plan, or based on any act or omission, transaction or other activity or security, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Confirmation Date that was or could have been the subject of any Claim or Interest, in each case regardless of whether a proof of Claim or

24

Interest was filed, whether or not Allowed and whether or not the holder of the Claim or Interest has voted on this Plan.

**8.3.**    Injunction Through Effective Date.  All injunctions, liens or stays entered in the Reorganization Case and existing immediately before the Confirmation Date will remain in full force and effect until the Effective Date.

**8.4.**    Permanent Injunction.  Except as expressly provided for in this Plan, all Entities, including, but not limited to, the holders of any and all charges, debts, liens, assignments, liabilities, encumbrances, security interests, Claims, Interests, contingent or unliquidated, known or unknown, foreseen or unforeseen, existing or hereafter arising, or other Causes of Action (including any claims of successor liability), will be precluded and permanently enjoined from asserting against:  (a) the Reorganized Debtor, and/or officers, members, directors, professionals and agents, (c) any successors and assigns of any of the foregoing and/or (d) the respective assets and property of any of the foregoing; any Claim or Interest based on any document, instrument, judgment, award, act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.  Such injunction will also preclude any act, in any manner, at any place whatsoever, that does not conform to or comply with the provisions of this Plan.

**8.5.**    Binding Effect. As of the Effective Date, according to section 1141 of the Bankruptcy Code, the provisions of this Plan will bind the Reorganized Debtor, any entity acquiring Community pursuant to a Plan Sale, any entity holding Property or Operating Assets to be acquired as part of a Plan Sale, and any holder of a Claim or an Interest, whether or not the Claim or Interest is Impaired under this Plan and whether or not the holder of the Claim or Interest has accepted this Plan.

**8.6.**    Discharge and Release on Effective Date.  On the Effective Date, the Reorganized Debtor shall be released and discharged from any and all Claims, whether now existing or hereafter arising, and held by any Entity, Creditor or party-in-interest, in any way related to the Debtor, the Assets, the Property, or the Operating Assets of the Debtor or this Reorganization Case.

8.7.    <u>Releases and Exculpation</u>.

(a)    As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor and the Reorganized Debtor, on its own behalf and as representative of and on behalf of the Estate, any and all Creditors, Residents, holders of any Claims or Interest or parties-in-interest (collectively in this Section, the "Releasing Parties") will be deemed to release forever, waive, and discharge the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen, or unforeseen, then exiting or thereafter arising, in law, equity, or otherwise, that the Releasing Parties, would have been legally entitled to asset in their own right against such Released Parties (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Reorganized Debtor, the estate, the Reorganization Case, this Plan or the Disclosure Statement, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interest in the Reorganization Case, the negotiation, formulation, or preparation of this Plan and the Disclosure Statement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

(b)    Releases By and Among Released Parties.  As of the Effective Date, each Released Party shall and hereby does, for good and valuable consideration, including consideration for the obligations of the Debtor and the Reorganized Debtor under this Plan and the distributions to be delivered under this Plan, the adequacy of which is hereby confirmed, forever release, waive, and discharge the other Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen, or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that such Released Party would have been legally entitled to assert in its own right against such other Released Parties (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Reorganized Debtor, the estate, the Reorganization Case, this Plan, or the Disclosure Statement, the restructuring of Claims and Interests in the Reorganization Case, the negotiation, formulation, or preparation this Plan and the Disclosure Statement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; <u>provided, however</u>, that this release shall not release any amounts owed to Released Parties by the Debtor as compensation (i.e., Allowed Professional Fees, etc.).

(c)    Injunction Related to Releases.  The Confirmation Order will permanently enjoin the commencement or prosecution by any entity, including but not limited to the Releasing Parties, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments,

26

damages, demands, debts, rights, causes of action, or liabilities released pursuant to this Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released in this Section.

(d)    Special Provisions Regarding Releases.  Notwithstanding anything in this Plan to the contrary, any person or entity may assert any claim released or purported to be released in this Plan as a defense or counterclaim (but no affirmative recovery may be obtained) to any suit or action that (i) is commenced by a person or entity that grants or that was purported to be deemed to have granted a release under this Plan and (ii) asserts a claim or cause of action released or purported to be released under this Plan.

(e)    Exculpation. Neither the  Debtor, the Reorganized Debtor, nor any of their respective officers, directors, employees, attorneys, representatives, financial advisors, investment bankers, advisors or agents, in their capacities as such (collectively, the "Exculpated Parties"), shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, or arising out of, the Reorganization Case, the pursuit of confirmation of this Plan, the consummation of this Plan or the administration of this Plan or the property to be distributed under this Plan.  The Confirmation Order shall enjoin the prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any such claim, obligation, suit, judgment, damage, loss, right, remedy, cause of action, charge, cost, debt, indebtedness, or liability which arose or accrued during such period or was or could have been asserted against any of the Exculpated Parties.  Each of the Exculpated Parties shall have the right to independently seek enforcement of this release provision. The rights granted hereunder are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law.  This exculpation from liability provision is an integral part of this Plan and is essential to its implementation.

### ARTICLE IX
### RESERVATION AND SETTLEMENT OF CLAIMS

**9.1.**    General Provision.  All claims under sections 544, 547, 548, and 549, 550, 551, 553 and 554 of the Bankruptcy Code, are and shall be extinguished as of the Effective Date; provided, however, that any such claims are reserved and may be used by the Reorganized Debtor  for defensive purposes with respect to any Claims.

**9.2.**    Release by Debtor of Chapter 5 Causes of Action

Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, for valuable consideration, the receipt and sufficiency of which is acknowledged, and without which this Plan could not be confirmed and consummated, on the Effective Date, and without any further documentation, the Debtor and the Reorganized Debtor shall be conclusively and irrevocably deemed to have released, canceled and compromised, any and all claims and causes of action in

favor of, or exercisable by the Debtor (including rights and causes of action which a trustee would have the right to bring on behalf of the bankruptcy estate), and/or the Reorganized Debtor, including, without limitation, all claims under sections 544, 547, 548, and 549, 550, 551, 553 and 554 of the Bankruptcy Code and/or similar claims arising under state or any other law, including claims in the nature of fraudulent transfer, successor liability, veil piercing, or alter-ego type claims (collectively, "Chapter 5 Claims").

**9.3.** Reservation of Causes of Action.

Except to the extent such rights, claims, Causes of Action, defenses, and counterclaims are expressly and specifically released in connection with the Plan, the Confirmation Order or any settlement agreement approved during the Bankruptcy Case, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code: (1) any and all rights, claims, Causes of Action, defenses, and counterclaims of, or accruing to, the Debtor or its Estate shall be retained by and vest in the Reorganized Debtor whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, Causes of Action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and (2) the Reorganized Debtor does not waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, claim, Cause of Action, defense, or counterclaim that constitutes property of the Estate: (a) whether or not such right, claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such right, claim, Cause of Action, defense, or counterclaim is currently known to the Debtor, and (c) whether or not a party in any litigation relating to such right, claim, cause of action, defense or counterclaim filed a proof of Claim in the Bankruptcy Case, filed a notice of appearance or any other pleading or notice in the Bankruptcy Case, voted for or against the Plan, or received or retained any consideration under the Plan. Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principal of law or equity, without limitation, any principals of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, THE FAILURE TO LIST, DISCLOSE, DESCRIBE, IDENTIFY, OR REFER TO A RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, OR POTENTIAL RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, IN THE PLAN, THE SCHEDULES, OR ANY OTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT SHALL IN NO MANNER WAIVE, ELIMINATE, MODIFY, RELEASE, OR ALTER ANY RIGHT OF THE DEBTORS, THE REORGANIZED DEBTOR TO COMMENCE, PROSECUTE, DEFEND AGAINST, SETTLE, AND REALIZE UPON ANY RIGHTS, CLAIMS, CAUSES OF ACTION, DEFENSES, OR COUNTERCLAIMS THAT THE DEBTOR, THE REORGANIZED DEBTOR, AS APPLICABLE, HAVE, OR MAY HAVE, AS OF THE EFFECTIVE DATE.

**9.4.**    Retention of Subsequent Causes of Action.

Except as is otherwise expressly provided herein or in the Confirmation Order, nothing in this Plan or the Confirmation Order shall preclude or estop the Debtor, the Reorganized Debtor, or their privies, as successors in interest to the Debtor and its privies, from bringing a subsequent action in any court or adjudicative body of competent jurisdiction, to enforce any or all of its or their rights in connection with the Causes of Action, irrespective of the identity of any interest, cause of action, or nexus of fact, issues or events which is now or which could have been asserted in these Bankruptcy Case, the present litigation, and those which may be asserted in any subsequent litigation brought by any interested party.  Moreover, the failure to commence any of the foregoing Causes of Action prior to the Confirmation Date shall not constitute res judicata, judicial or collateral estoppel with respect to any such Cause of Action.

**9.5.**    Indemnification of Directors and Officers.  The Reorganized Debtor shall indemnify, to the fullest extent possible under the Reorganized Debtor's constituent documents and applicable non-bankruptcy law, any person serving as a director or officer of the Reorganized Debtor for any action or omission of such person as a director or officer of the Debtor, regardless of whether such act or omission occurred prior to or after the Petition Date, and such indemnification obligations of the Debtor and the Reorganized Debtor shall be deemed assumed for purposes of this Plan.

## ARTICLE X
## MODIFICATION OF THIS PLAN

**10.1.**    Modification. Proponent reserves the right, according to the Bankruptcy Code, to amend or modify this Plan before the Effective Date.  After the Effective Date, the Proponent may, upon order of the Bankruptcy Court, and according to Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in this Plan in such manner as may be necessary to carry out the purposes and intentions of this Plan.

**10.2.**    Prior Votes on Modification.  A Claimant that has accepted or rejected this Plan will be deemed to have either accepted or rejected, as the case may be, this Plan as modified or amended, even if the modifications or amendments are made after the solicitation of votes of acceptance or rejection of this Plan, unless the Bankruptcy Court orders that such Claimant may change its previous vote within a time established by the Bankruptcy Court for such change to be made.

## ARTICLE XI
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE OF THIS PLAN

**11.1.**    Conditions to Entry of Confirmation Order.  This Plan shall not be confirmed unless the following conditions have been satisfied or waived in writing by the Proponent:

(a)    The Confirmation Order and this Plan as confirmed pursuant to the Confirmation Order shall be in a form and substance satisfactory to the Proponent.

**11.2.**    <u>Conditions to Occurrence of the Effective Date.</u>  The Effective Date of this Plan shall occur automatically upon the filing by Proponent of a Notice of Occurrence of Effective Date stating that the conditions set forth below have been satisfied (or will be satisfied contemporaneously with or upon the occurrence of the Effective Date) or waived in writing by the Proponent:

(a)    All documents reasonably necessary in the opinion of the Debtor to consummate this Plan, including but not limited to, the Series 2014 Bond Documents and the New Foundation Note, shall have been executed and delivered by all appropriate parties thereto consistent with the terms and conditions of this Plan;

(b)    The public authority issuing the Series 2014 Bonds shall have approved issuance of such bonds, and the Reorganized Debtor shall have obtained an opinion of bond counsel that the interest on the Series 2014 Bonds shall be excludable from gross income for federal income tax purposes;

(c)    The Confirmation Order shall have been entered;

(d)    The Confirmation Order shall be unstayed and shall have become a Final Order;

(e)    The Debtor shall have funds sufficient for the payment of all Administrative Expenses, the payment of the Class 3 Priority Claims (if due), Class 8 Unsecured Claims, and any and all Cure Payments owing under this Plan;

(f)    Unless otherwise extended by the Debtor, in its sole discretion, the Effective Date shall occur on or before October 22, 2014.

**11.3.**    <u>Revocation or Withdrawal of this Plan.</u>

(a)    The Proponent may revoke or withdraw this Plan prior to the Effective Date.

(b)    If this Plan is revoked or withdrawn prior to the Effective Date in accordance with this Plan, or the Effective Date does not occur because the conditions precedent thereto have not been satisfied, then this Plan shall be deemed null and void.  In such event, (i) the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the confirmation of this Plan, and (ii) all the Debtor's respective obligations with respect to the Claims and Interests shall remain unchanged, all of the Debtor's rights against all persons or Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtor or any other person or Entity or to prejudice in any manner the rights of the Debtor or any person or Entity in any further proceedings involving the Debtor or such person or Entity.

# ARTICLE XII
# GENERAL PROVISIONS

**12.1.** <u>Notices.</u>  Except as otherwise specified, all notices and requests will be given by any written means, including but not limited to, telex, telecopy, telegram, first class mail, express mail or similar overnight delivery service and hand delivered letters, and any such notice or request will be deemed to have been given when received.  Notices will be delivered as follows:

<div style="margin-left:2em">

To: Debtor:   River Terrace Estates, Inc.<br>
       400 Caylor Boulevard<br>
       Bluffton, IN 46714<br>
       Attn: Mr. David Stewart, CEO

With a copy to:  Bobby Guy, Esq.<br>
       Frost Brown Todd LLC<br>
       The Pinnacle at Symphony Place<br>
       150 3rd Avenue South, Suite 1900<br>
       Nashville, TN  37201

</div>

**12.2.** <u>Extension of Payment Dates.</u>  If any Distribution date falls due on any day that is not a Business Day, then such payment date will be extended to the next Business Day.

**12.3.** <u>Confirmation by Non-Acceptance Method.</u>  The Proponent hereby requests confirmation of this Plan pursuant to Bankruptcy Code Section 1129(b) with respect to any Impaired Class that does not vote to accept this Plan.

**12.4.** <u>Section 1125(e) Good Faith Compliance.</u> The Proponent and its representatives shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.  Further, the terms of the Series 2014 Bonds and this Plan are appropriate and reasonable, are in the best interests of all creditors and parties in interest, and do not constitute a private inurement to or for any party.

**12.5.** <u>Section 1145 Exemption.</u> Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any securities pursuant to the Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act of 1933, 15 U.S.C. § 77a-77aa, to the maximum extent permitted thereunder and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of securities.

**12.6.** <u>Payment of Statutory Fees.</u>  All fees payable pursuant to Section 1930 of Title 28 of the United States Code will be paid until the Bankruptcy Court enters a Final Decree.

**12.7.** <u>Dissolution of Any Committees.</u>  On the Effective Date, any committees formed in this case shall be automatically dissolved.

**12.8.**   Valuation. This Plan shall constitute a motion for valuation pursuant to section 506 of the Bankruptcy Code, and any valuation issues may be determined at the Confirmation Hearing hereon or thereafter if continued at that hearing.

**12.9.**   Headings.  The headings used in this Plan are inserted for convenience only and constitute part neither of this Plan nor in any manner affect the provisions or interpretations of this Plan.

**12.10.**   Enforceability.  Should any provision of this Plan be determined to be unenforceable for any reason, such determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**12.11.**   Exemption from Transfer Taxes.  Pursuant to Section 1146(c) of the Bankruptcy Code, the sale of the Property (whether before or after the Effective Date), the issuance, transfer or exchange of notes or equity securities under this Plan and related transactions, the creation or assumption of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under this Plan, whether occurring before or after the Effective Date, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

**12.12.**   Board and Management.

(a)   The Board of Directors and management of the Debtor as of the Effective Date shall remain in place as the Board of Directors and management of the Reorganized Debtor, subject to the ordinary course governance of the Board of Directors.

(b)   Employees and officers of the Debtor will remain employed by the Reorganized Debtor on and after the Effective Date to assist the Reorganized Debtor with the administration of the Estate and the Business of the Reorganized Debtor.

**12.13.**   Change in Control.  The entry of the Confirmation Order, consummation of this Plan and/or all other acts taken to implement this Plan shall not constitute a change in ownership or change in control under any provisions of any control, agreement or other document which provides for the occurrence of any event, the granting of any right, or any other change in the then-existing relationship between the parties upon a change in ownership or change in control of the Debtor or the Reorganized Debtor.

**12.14.**   Closing of Chapter 11 Case Pursuant to Rule 3022.  Without limitation, Debtor may close this case at any time following the Effective Date upon substantial consummation of the Plan

and the resolution of any outstanding contested matters before the Court, by filing a motion for final decree pursuant to Rule 3022.

## ARTICLE XIII
## RETENTION OF JURISDICTION

**13.1.**    The Bankruptcy Court will retain jurisdiction of all matters arising out of or related to the Reorganization Case and this Plan as long as necessary for the purposes of Sections 105(a), 1127, 1142(b) and 1144 of the Bankruptcy Code and for, inter alia, the following non-inclusive purposes:

        (a)    to decide any objections to the allowance, disallowance or subordination of Claims or a controversy as to the classification of Claims;

        (b)    to decide and fix (i) all Administrative Claims, (ii) Claims arising from the rejection of any executory contracts or unexpired leases, (iii) Liens on any Assets or any proceeds thereof, and (iv) any other fee and expense authorized to be paid or reimbursed under the Bankruptcy Code;

        (c)    to liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any disputed, contingent or unliquidated Claims;

        (d)    to determine any matters regarding the Plan Sale, including without limitation, in the event of a dispute, any issues regarding whether a Bid is conforming, whether a winning Bidder is the highest and best Bidder, whether the winning Bidder is providing adequate assurance pursuant to section 365 of the Bankruptcy Code, and similar matters;

        (e)    to adjudicate any matters as may be provided for in the Confirmation Order;

        (f)    to effectuate Distributions under and enforce the provisions of this Plan;

        (g)    to hear and determine any pending applications, adversary proceedings or contested matter including all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of this Plan, and matters concerning state, local and federal taxes according to Sections 346, 505 and 1146 of the Bankruptcy Code;

        (h)    to amend or to correct any defect, cure any omission or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

        (i)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

(j)       to consider any modification of this Plan pursuant to Section 1127 of the Bankruptcy Code or modification of this Plan after substantial consummation, as such terms is defined in Section 1101(2) of the Bankruptcy Code;

(k)       to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code to the maximum extent of its jurisdiction; and

(l)       to enter a final decree closing the Reorganization Case.

**[signature on next page]**

Dated:  July 22, 2014

**River Terrace Estates, Inc.**

By: _____

David Stewart, ~~President~~ CEO