## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **RIVER TERRACE ESTATES, INC.** | ) | **Case No. 14-11829-reg** |
| | ) | **Chapter 11** |
| Debtor. | ) | |

### DEBTOR'S FIRST AMENDED MOTION TO APPROVE FINAL ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 364; AND (II) GRANTING SUPERPRIORITY CLAIM

Debtor, River Terrace Estates, Inc. ("River Terrace" or "Debtor"), by counsel, moves the Court pursuant to Sections 105, 361, 362, 364 and 105 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rules 2002-2(a)(3) and (b)(1)(C) and 9013-2, *inter alia*, to enter a final order authorizing the Debtor's use of postpetition financing and the Debtor's grant of a superpriority unsecured claim in substantially the form attached hereto as Exhibit 1 (as proposed, the "Final DIP Financing Order"). This Amended Motion is filed, along with a new Notice of Motion And Right to Object, in order to ensure that proper notice is given to all creditors and parties-in-interest in the case as directed by the Court. In support of this Motion, River Terrace would show the Court as follows:

1.    The Debtor filed its *Motion of the Debtor for Interim and Final Orders (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364; and (II) Granting Liens and Superpriority Claim; and (III) Scheduling Final Hearing on the Debtor's Motion to Incur Such Financing on a Permanent Basis Pursuant to Bankruptcy Rule 4001* on July 22, 2014 [DE 23](the "DIP Financing Motion"). After hearing on July 30, 2014, the Court entered an *Agreed Order* dated August 1, 2014 [DE 105](the "First Interim DIP

Order") by which the Debtor was authorized to obtain postpetition financing on the terms set forth therein, up to a maximum of $50,000 on an interim basis.

2.      On August 18, 2014 and September 3, 2014, the Court conducted additional hearings on the DIP Financing Motion and on September 3, 2014, entered a *Second Agreed Interim Order (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364; and (II) Granting Superpriority Claim* [DE 168](the "Second Interim DIP Order").

3.      The Debtor now requests entry of the Final DIP Financing Order for the reason that it further clarifies the rights and responsibilities as between the Debtor, the DIP Lender and the Master Trustee, increases the aggregate principal amount available to the Debtor from $50,000 to $600,000 as requested in the DIP Financing Motion, and, importantly, conforms the terms under which the Debtor may obtain post-petition financing with the terms under which the Debtor may use cash collateral.

4.      Further, and importantly, the Final DIP Financing Order provides that DIP financing will no longer be on a secured basis, as initially requested by the DIP Lender. Consistent with the First and Second Interim DIP Orders, the DIP financing will now be on an unsecured basis, with the DIP Lender to have only a superpriority administrative claim for repayment. The Term Sheet attached as an exhibit to the DIP Financing Motion is modified as necessary to be consistent with the proposed Final DIP Financing Order.

5.      Pursuant to Rule 4001(c)(1)(B) of the Bankruptcy Rules, the Debtor provides the following statement of the relief requested and a summary of the material provisions of the proposed Final DIP Financing Order and the locations within the proposed Final DIP Financing Order:

| Term | Summary | Provision in Proposed Final DIP Financing Order |
|---|---|---|
| Borrower | The Debtor, River Terrace Estates, Inc. | Introductory Paragraphs |
| Lender | River Terrace Estates Foundation, Inc. (the "DIP Lender") | Introductory Paragraphs |
| Borrowing Limit and Availability | Debtor is authorized to request, and DIP Lender may make, advances in an aggregate principal amount not to exceed $600,000. | Paragraph 2 |
| Events of Default | The DIP Term Sheet contains various events of default including, but not limited to: (i) conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code and/or dismissal of the Debtor's Chapter 11 case, (ii) the appointment of a Chapter 11 trustee under section 1104 of the Bankruptcy Code, without prior written consent of the DIP Lender, (iii) the appointment of an examiner with enlarged powers under section 1106(b) of the Bankruptcy Code, (iv) the entry of a final order by the Bankruptcy Court amending, supplementing, staying, vacating or otherwise modifying the DIP Term Sheet, the Interim Financing Order, and/or the Final Financing Order, without the prior consent of the DIP Lender, (v) failure to make all payments under the DIP Facility, the Interim Financing Order and the Final Financing order when due, subject to any applicable grace period, (vi) the breach of the Interim Financing Order, and/or the Final Financing Order, subject to any applicable grace periods, and (vii) failure of the Debtor to observe or perform any warranty, covenant, condition or agreement to be observed or performed by the Debtor under the Interim Financing order and the Final Financing Order or any of the other agreements related to the DIP Facility. | Paragraph 9, and Exhibit B to the DIP Financing Motion (the Term sheet) |
| DIP Budget | The Debtor's Approved Budget (as defined in the First and Second Interim DIP Orders) is attached to the Final DIP Order as Exhibit A. Note that the budget attached to the Final DIP Order is identical to that attached to the Second Interim DIP Order. | Exhibit A |
| Use of Proceeds | The Debtor shall use the DIP Facility for working capital needs of the Borrower, consistent with the Budget and the Carve-Out (defined below), as more fully set forth in the Final DIP Order. | Paragraph 5 |
| Maturity Date | The DIP Lender's obligation to provide the DIP Facility in accordance with the DIP Term Sheet shall automatically terminate and the DIP Facility obligations shall mature without any further action by the Bankruptcy Court or the DIP Lender, upon the earliest to occur of, (i) December 31, 2014; (ii) the confirmation of the pending plan of reorganization in this case, unless the plan provides for a sale of substantially all of the Debtor's assets, in which case the date shall be the date of the closing; (iii) the closing of a sale of substantially all of the assets of the Debtor that has been approved by this Court in the Debtor's Chapter 11 bankruptcy case; (iv) the conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; and (v) the date the DIP Facility becomes due and payable, whether at stated maturity, upon an Event of Default | Paragraph 6 |

| Term | Summary | Provision in Proposed Final DIP Financing Order |
|------|---------|------------------------------------------------|
| | (defined below) or otherwise. | |
| Interest Rate | Interest on the DIP Facility Obligations, for the period commencing on the date of such DIP Facility Obligation until such DIP Facility Obligation is paid in full, shall accrue at the rate of five percent (5.00%) per annum; provided that at any time an Event of Default exists, the interest rate applicable to the DIP Facility Obligations shall be increased by two percent (2.00%) per annum. Accrued interest shall be paid by the Debtor at the times as provided in the DIP Term Sheet. Interest on the DIP Facility Obligations shall be calculated on a 360-day year and actual number of days elapsed in each calendar month. | Paragraph 4 |
| Superpriority Claim | Subject only to the Carve-Out (defined below) and the liens in favor of the Master Trustee, all DIP Facility Obligations shall constitute allowed, super-priority, administrative expense claims under section 503(b) of the Bankruptcy Code and under section 364 of the Bankruptcy Code (the "**DIP Super-Priority Claims**") against the Debtor, having priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code. | Paragraph 8 |
| Borrowing Conditions | The DIP Term Sheet contains certain customary conditions precedent to entry into same. | Introductory Paragraph 5, Paragraph 8 |
| Carve-Out | The Final DIP Order provides for a "**Carve-Out.**" The Carve-Out shall mean the DIP Liens shall be junior, in each case, only to: (i) the payment of fees pursuant to 28 U.S.C. § 1930, (ii) under certain circumstances and with limitations based on such circumstances, the payment of allowed and unpaid professional fees and disbursements incurred by the Debtor. | Paragraph 9 |

## **RELIEF REQUESTED**

6.      For the foregoing reasons, and for the reasons set forth and on the basis described in the DIP Financing Motion, the Debtor respectfully requests that this Court enter the Final DIP Order in the form attached hereto as Exhibit 1. The Debtor incorporates the DIP Financing Motion as if set forth fully herein. The Debtor has also attached a copy of the original Term Sheet from the DIP Financing Motion as Exhibit 2, simply for ease of reference for readers, and

the Term Sheet is modified in all respects to the extent necessary to conform to the proposed Final DIP Order.

## APPROVAL OF DIP FUNDING IS APPROPRIATE AND NECESSARY

7.    Pursuant to Section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate. In re Simasko Production, 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing agreement where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estate); In re Ames Dept. Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties"); see also Collier on Bankruptcy, ¶ 364.05 (15th ed. rev.). Section 364(c) of the Bankruptcy Code provides in pertinent part:

(c)    If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt:

(1)    with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2)    secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3)    secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. Section 364(c).

8.    In satisfying the standards of section 364(c) of the Bankruptcy Code, a debtor need not seek credit from every available source but should make a reasonable effort to seek other sources of credit available of the type set forth in Sections 364(a) and (b) of the Bankruptcy Code. See In re Snowshoe Co., 789 F.2d 1085, 1088 (11th Cir. 1986) (trustee demonstrated by

good faith effort that credit was not available without senior lien by unsuccessfully contacting other financial institutions in immediate geographic area; "the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"); see also Ames, 115 B.R. at 40 (debtors demonstrated the unavailability of unsecured financing where debtors approached several lending institutions); In re Plabell Rubber Prods., Inc., 137 B.R. 897,900 (Bankr. N.D. Ohio 1992) (same); In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing"), aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

9.      Courts have articulated a three-part test to determine whether a debtor in possession is entitled to financing under section 364(c) of the Bankruptcy Code: (i) whether the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, i.e., by allowing a lender only an administrative claim; (ii) whether the credit transaction is necessary to preserve the assets of the estate; and (iii) whether the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender. See, e.g., In re Farmland Indus., Inc., 294 B.R. 855, 880 (Bankr. W.D. Mo. 2003); In re Aqua Assocs., 123 B.R. 192, 195-96 (Bankr. E.D. Pa, 1991); In re Ames Dep't Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); In re Crouse Group, Inc., 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987).

10.     Here, the Debtor has satisfied all requirements for financing. In summary, the Debtor is unable to obtain financing from another source on any basis, including an unsecured basis. The Debtor must have the funds in order to cash flow through the case, including to pay resident entrance fee refunds which are critical to maintaining resident morale and the value of the Community, and without which the value of the Community is likely to swiftly decline. Finally, the Debtor, and The

Bank of New York as Master Trustee and Indenture Trustee (collectively, "BNY"), have has been able to persuade the DIP Lender to make the DIP loan on a superpriority, but unsecured basis, so that the DIP Lender will not have liens, and BNY has withdrawn its objection to the DIP loan.  Further bases for entry of the Final DIP Financing Order are set out in the DIP Financing Motion.

WHEREFORE the Debtor respectfully requests that this Court enter the Final DIP Order Authorizing Use of Cash Collateral in the form attached hereto as Exhibit A, and for such as the Court deems just under the circumstances.

Dated:  October 23, 2014                        Respectfully submitted,

**FROST BROWN TODD LLC**

/s/ Jeffrey A. Hokanson
Jeffrey A. Hokanson (jhokanson@fbtlaw.com)
201 North Illinois Street, Suite 1900
Indianapolis, Indiana  46204-4236
(317) 237-3962
(317) 237-3900 Fax

Robert A. Guy, Jr., Esq. (bguy@fbtlaw.com)
150 3rd Avenue South, Suite 1900
Nashville, Tennessee 37201
(615) 251-5550
(615) 251-5551 Fax

-and-

Ronald E. Gold (rgold@fbtlaw.com)
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
(513) 651-6800
(513) 651-6981  Fax

**COUNSEL FOR THE DEBTOR AND
DEBTOR-IN-POSSESSION**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **CASE NO. 14-11829** |
| | ) | |
| **RIVER TERRACE ESTATES, INC.,** | ) | **CHAPTER 11** |
| | ) | |
| **DEBTOR.** | ) | **JUDGE ROBERT E. GRANT** |

**FINAL ORDER (I) AUTHORIZING DEBTOR TO OBTAIN**
**POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362**
**AND 364; AND (II) GRANTING SUPERPRIORITY CLAIM**

At Fort Wayne, Indiana, on _____, 2014.

This matter is before the Court on the *Debtor's Motion for Entry of Final Order (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364; and (ii) Granting Superpriority Claim*, filed on September 29, 2014 [DE 203].

The Debtor filed its *Motion of the Debtor for Interim and Final Orders (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364; and (II) Granting Liens and Superpriority Claim; and (III) Scheduling Final Hearing on the Debtor's Motion to Incur Such Financing on a Permanent Basis Pursuant to Bankruptcy Rule 4001* on July 22, 2014 [DE 23](the "DIP Financing Motion"). After hearing on July 30, 2014, the Court entered an *Agreed Order* dated August 1, 2014 [DE 105](the "First Interim DIP Order") by which the Debtor was authorized to obtain postpetition financing on the terms set forth therein.

On August 18, 2014 and September 3, 2014, the Court conducted additional hearings on the DIP Financing Motion and on September 3, 2014, entered a *Second Agreed Interim Order (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364; and (II) Granting Superpriority Claim* [DE 168](the "Second Interim DIP Order").

**Exhibit 1**

Based on the statements made in the Motion before the Court, as well as the DIP Financing Motion, the First Interim DIP Order and Second Interim DIP Order, all of which are adopted herein:

The Debtor requests authority to (i) obtain post-petition financing on a final and permanent basis River Terrace Estates Foundation, Inc. (the "DIP Lender"); (ii) enter into the DIP Facility consistent with the term sheet attached to the DIP Financing Motion as <u>Exhibit 2</u> and to perform such other and further acts as may be required in connection with the DIP Facility; and (iii) grant, subject to the rights and claims of The Bank of New York Mellon Trust Company, N.A., successor to Bank One Trust Company, National Association as Master Trustee (the "Master Trustee"), a valid superpriority claim to and on behalf of and for the benefit of the DIP Lender specifically excluding the proceeds of any and all Bankruptcy Actions.

The Court further finds:

A.      The Debtor does not have sufficient financing to fund its operations in the ordinary course of business after the Petition Date. Unless the Debtor is authorized to obtain the financing requested in the Motion, the Debtor's ability to fund its operations will be severely limited and harmed and its assets will diminish in value.

B.      The use of the "Cash Collateral," as defined in the Bankruptcy Code, alone will not be sufficient to fund the operations of the Debtor. The Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code. Financing on a post-petition basis is not otherwise available without the Debtor granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code.

C.      The post-petition financing arrangement set forth in this Final Financing Order was negotiated at arm's length and in good faith as that term is defined in section 364(e) of the Bankruptcy Code, and the DIP Lender is entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

IT IS THEREFORE ORDERED:

1.      Motion Granted.   The Motion is granted and this Order shall become effective immediately upon its entry.

2.      Authority to Borrow.   The Debtor is hereby authorized to borrow and request, and the DIP Lender may make in its sole discretion advances in an aggregate principal amount not to exceed $600,000.

3.      Modification of the Automatic Stay.   The automatic stay under section 362(a) of the Bankruptcy Code shall be, and hereby is modified as to the DIP Lender in order to allow for compliance with the terms and provisions of this Interim Financing Order.

4.      Interest and Default Interest on the DIP Facility Obligations.   Financing provided by the DIP Lender to the Debtor (the "DIP Facility Obligations") shall accrue interest at the rate of five percent (5.00%) per annum for the period commencing on the date of such DIP Facility Obligation until such DIP Facility Obligation is paid in full; provided that at any time an Event of Default exists, the interest rate applicable to the DIP Facility Obligations shall be increased by two percent (2.00%) per annum.   Accrued interest shall be paid by the Debtor on the Maturity Date.   Interest on the DIP Facility Obligations shall be calculated on a 360-day year and actual number of days elapsed in each calendar month.

5.      DIP Budget/Permitted Uses.

(a)    Subject to the Budget, the Debtor may use the Advances under the DIP Facility to pay the actual, necessary ordinary course operating expenses, including the funding of professional fees and other administrative expenses of the Debtor's bankruptcy estate. The Debtor shall also establish an escrow account (the "Escrow Account") to be funded, consistent with the Budget, on a weekly basis, which will provide for payment of all allowed professional fees and expenses of any professional retained by the Debtor or any official committee (if appointed). No distributions shall be made to any professional from the Escrow Account until such professional's fees and expenses are approved by an order of the Court following notice and a hearing.

(b)    The Budget, attached hereto as Exhibit A, shall be deemed to be the initial approved Budget. If the Debtor elects to modify the Budget, the Debtor shall submit the modified Budget(s) (any such budget, a "Modified Budget") to the DIP Lender for approval and to the Master Trustee for review. The Modified Budget shall be in form similar to the initial Budget and shall be in substance satisfactory to the DIP Lender, and shall be broken out on a week-by-week budgetary basis for a rolling thirteen week period. Five days after the Modified Budget is received by the DIP Lender and the Master Trustee, the DIP Lender shall inform the Debtor as to whether it approves or disapproves of any or all of the expense line items set forth on any such Modified Budget, and the aggregate of items so approved, if any, shall constitute the new Budget for such period on a going-forward basis.

6.    <u>Maturity Date</u>. The DIP Lender's obligation to provide the DIP Facility shall automatically terminate and the DIP Facility obligations shall mature without any further action by the Bankruptcy Court or the DIP Lender, unless otherwise extended by the DIP Lender, upon the earliest to occur of: (i) December 31, 2014; (ii) the confirmation of the pending plan of

reorganization in the Debtor's chapter 11 bankruptcy case, unless the plan of reorganization provides for a sale of substantially all of the assets of the Debtor, in which, case, the date shall be the date of the closing; (iii) the closing of a sale of substantially all of the assets of the Debtor that has been approved by the Court in the Debtor's chapter 11 bankruptcy case; (iv) the conversion of the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code; and (v) the date the DIP Facility becomes due and payable, whether at stated maturity, upon an Event of Default (defined below) or otherwise (the "Maturity Date"). The Maturity Date may be extended in the DIP Lender's sole and absolute discretion.

7.      <u>Survival After Maturity</u>. Notwithstanding anything in this Final Financing Order or the occurrence of the Maturity Date and subject to the Carve-Out, all of the rights, remedies, benefits and protections provided to the DIP Lender under this Interim Financing Order shall survive the Maturity Date.

8.      <u>Super-Priority Claims</u>. Subject only to the Carve-Out (defined below) and the valid, perfected and non-avoidable liens in favor of the Master Trustee, all DIP Facility Obligations shall constitute allowed, super-priority, administrative expense claims under section 503(b) of the Bankruptcy Code and under section 364 of the Bankruptcy Code (the "DIP Super-Priority Claims") against the Debtor, having priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503, 506(c), 507, 546(c), 726, 1113 and 1114 of the Bankruptcy Code, but excluding section 507(b) of the Bankruptcy Code, or otherwise whether incurred in the Chapter 11 bankruptcy case or any conversion thereof to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto. All claims of the DIP Lender arising from the DIP Facility Obligations shall be

unsecured.    Notwithstanding anything to the contrary herein, in the event of a sale of substantially all of the assets of the Debtor whether pursuant to an order of the Court or pursuant to a plan of reorganization which occurs after the effective date of the plan of reorganization, the Debtor shall allocate and the plan of reorganization shall provide and the Debtor shall include therein an amount equal to pay to the DIP Lender funds such that the DIP Lender shall have a balance of $750,000, exclusive of any subsequent contributions by third parties.

9.    <u>Carve-Out</u>.    The DIP Super-Priority Claims shall be junior, in each case, to (collectively, but subject to the limitations set forth in this paragraph, the "Carve-Out"): (i) the payment of fees pursuant to 28 U.S.C. § 1930, (ii) in the event of the occurrence and during the continuance of an Event of Default (as defined in the term sheet attached as Exhibit B to the Motion), the payment of allowed and unpaid professional fees and disbursements incurred by the Debtor after the date of such Event of Default (and regardless of when such fees and expenses become allowed by order of the Bankruptcy Court), in an aggregate amount not in excess of $100,000 (the "Post-Default Fees and Expenses") (plus, all unpaid professional fees and disbursements incurred prior to the occurrence of such Event of Default (and regardless of when such fees and expenses are allowed)) to the extent (A) such fees and expenses do not exceed the amounts budgeted or escrowed therefor on the pertinent Approved Budgets for the period prior to such Event of Default (the "Budgeted Amounts") and (B) such fees and expenses have been or are subsequently allowed by the Bankruptcy Court.

10.    <u>No Third Party Rights</u>.    Except as explicitly provided for in this Final Financing Order, this Final Financing Order does not create any rights for the benefit of any third party, creditor, equity holder or any other direct, indirect or incidental beneficiary.

11.    <u>Good Faith</u>.    The terms of the financing arrangements by and between the Debtor and the DIP Lender have been negotiated in good faith and at arms' length and any loans, advances or other financial accommodations which are made or caused to be made to the Debtor by the DIP Lender pursuant to this Final Financing Order are deemed to have been made and provided in good faith, as the term "good faith" is used in section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code.

12.    <u>Binding Effect; Successors and Assigns</u>.    This Final Financing Order is hereby deemed effective immediately pursuant to Federal Bankruptcy Rules of Procedure 6004(h).  The provisions of this Final Financing Order shall be binding upon and inure to the benefit of the DIP Lender and the Debtor and their respective successors and assigns, including any Chapter 7 trustee or other trustee or fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor in a successor bankruptcy case.

13.    <u>Conflict</u>.    The DIP Facility Obligations shall be governed exclusively by the provisions of this Final Financing Order.

14.    <u>Jurisdiction</u>.    The Court has and will retain jurisdiction to enforce this Final Financing Order according to its terms.

SO ORDERED.

_____
The Honorable Robert E. Grant
Judge, United States Bankruptcy Court

10/23/2014

1/4

River Terrace Estates, Inc.
Weekly Cash Budget For Period ending Nov. 29

| | Week ending 2-Aug | | Week ending 9-Aug | | Week ending 16-Aug | | Week ending 23-Aug | | Week ending 30-Aug | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Budget | Actual | Budget | Actual | Budget | Actual | Budget | Actual | Budget | Actual |
| Bank Balance - beginning | 195,925 | 214,962 | 133,094 | 133,094 | 221,141 | 221,141 | 219,687 | 219,687 | 260,284 | 260,284 |
| **Cash receipts** | | | | | | | | | | |
| IL Revenue | 13,124 | 46,220 | 61,174 | 121,888 | 48,154 | 161,744 | 50,016 | 91,928 | 85,657 | 52,601 |
| AL Revenue | | - | | - | | - | | - | | - |
| MS Revenue | | - | | - | | - | | - | | - |
| Entrance Fee | | - | | - | 24,000 | - | | - | | - |
| MCD Revenue | | - | | - | | - | 28,147 | - | | - |
| MCRA/B Revenue | | - | | - | | - | 23,412 | - | 21,254 | - |
| Insurance Rev | | - | | - | | - | | - | | - |
| Private Pay - HC | 23,256 | - | 24,483 | - | 38,587 | - | 32,778 | - | 13,151 | - |
| TOTAL | 36,379 | 46,220 | 85,657 | 121,888 | 110,742 | 161,744 | 134,353 | 91,928 | 120,062 | 52,601 |
| **Disbursements** | | | | | | | | | | |
| Administrative Expenses | 5,680 | 1,493 | 4,000 | 2,223 | 4,000 | 2,117 | 5,000 | 2,296 | 4,000 | 2,589 |
| Other Exp | | - | | 49 | | - | | - | | - |
| Lifestyle Expenses | 75 | 50 | 75 | - | 75 | 350 | 75 | 675 | 1,075 | 25 |
| Maintenance/Grounds | 550 | - | 2,530 | 920 | 550 | 525 | 4,056 | 4,562 | 2,444 | 2,007 |
| Dining/Kitchen | 8,128 | 6,790 | 8,128 | 6,244 | 8,128 | 6,894 | 8,128 | 7,458 | 9,128 | 7,002 |
| Housekeeping | 550 | 417 | 550 | 155 | 915 | 786 | 1,450 | 1,079 | 550 | 398 |
| Marketing | 2,800 | 559 | 2,800 | 28 | 2,800 | 518 | 2,800 | 6,230 | 2,800 | 2,714 |
| Nursing - SNF | 3,000 | 1,252 | 2,500 | 4,425 | 2,000 | 1,619 | 39,100 | 25,845 | 2,000 | 2,804 |
| Transportation | 200 | - | 1,200 | 28 | 680 | 804 | | 13 | | 998 |
| Utilities | 11,000 | 1,333 | - | 19,578 | 3,030 | - | - | 2,554 | 1,200 | 9,824 |
| Insurance | 3,490 | - | | - | 11,000 | 14,411 | - | - | | - |
| Management Fees | | 1 | 9,244 | 50 | | 9,935 | 419 | 124 | | - |
| Assisted Living | | | | | | | | | | |
| Payroll | 113,000 | 115,008 | - | - | 118,500 | 118,221 | - | - | 117,000 | 107,149 |
| Cap X | 4,200 | - | 2,500 | - | 2,500 | 3,500 | 2,500 | - | 2,500 | - |
| Resident Refunds (CCRC) | - | - | - | - | - | - | 17,000 | - | 15,000 | - |
| Misc. | 500 | 1,185 | 500 | 170 | 500 | 518 | 500 | 495 | 500 | 278 |
| Total Routine Disbursements | 153,173 | 128,088 | 34,027 | 33,841 | 154,678 | 160,198 | 81,028 | 51,331 | 158,197 | 135,788 |
| RTE Professional Fee Escrow Deposits/Pmts. | - | - | - | - | - | 3,000 | 37,600 | - | 37,600 | 75,200 |
| Indenture Trustee and Counsel | - | - | - | - | - | - | - | - | - | - |
| TOTAL DISBURSEMENTS | 153,173 | 128,088 | 34,027 | 33,841 | 154,678 | 163,198 | 118,628 | 51,331 | 195,797 | 210,988 |
| Surplus/Shortfall | (116,793) | (81,868) | 51,630 | 88,047 | (43,936) | (1,454) | 15,725 | 40,597 | (75,735) | (158,387) |
| Bank Balance - ending (before DIP loan advance or Retainers) | 79,132 | 133,094 | 184,724 | 221,141 | 177,204 | 219,687 | 235,412 | 260,284 | 184,548 | 101,897 |
| DIP LOAN | 50,000 | | | | | | | | | |
| Retainers | | | | | | | | | | |
| Bank Balance - ending (after DIP loan advance and Retainers) | 129,132 | 133,094 | 184,724 | 221,141 | 177,204 | 219,687 | 235,412 | 260,284 | 184,548 | 101,897 |

Weekly Cash Budget for 10 22 14 DIP Motion

**Exhibit A**

10/23/2014

River Terrace Estates, Inc.
Weekly Cash Budget For Period ending Nov. 29

| | Week ending 6-Sep | | Week ending 13-Sep | | Week ending 20-Sep | | Week ending 27-Sep | |
|---|---|---|---|---|---|---|---|---|
| | Budget | Actual | Budget | Actual | Budget | Actual | Budget | Actual |
| Bank Balance - beginning | 101,897 | 101,897 | 95,197 | 95,197 | 81,087 | 81,087 | 223,172 | 223,172 |
| Cash receipts | | | | | | | | |
| IL Revenue | 12,906 | 49,472 | 59,369 | 90,058 | 86,462 | 155,528 | 99,386 | 34,942 |
| AL Revenue | - | - | | - | - | - | - | - |
| MS Revenue | | - | | - | | - | | - |
| Entrance Fee | | - | | - | | - | | - |
| MCD Revenue | | - | | - | 28,147 | 31,732 | | - |
| MCBA/B Revenue | | - | | - | 23,412 | | 21,254 | - |
| Insurance Rev | | - | | - | | - | | - |
| Private Pay - HC | 23,256 | - | 24,483 | - | 48,587 | - | 42,778 | - |
| TOTAL | 36,162 | 49,472 | 83,852 | 90,058 | 186,609 | 187,260 | 163,418 | 34,942 |
| Disbursements | | | | | | | | |
| Administrative Expenses | 5,582 | 1,339 | 4,000 | 2,088 | 4,000 | 1,926 | 4,000 | 2,122 |
| Other Exp | - | - | - | - | - | 2,723 | - | 7,444 |
| Lifestyle Expenses | 75 | 80 | 75 | 304 | 75 | 205 | 1,075 | - |
| Maintenance/Grounds | 550 | 2,365 | 2,530 | 1,522 | 4,056 | 1,085 | 2,444 | 2,139 |
| Dining/Kitchen | 8,128 | 6,506 | 8,128 | 6,797 | 8,128 | 14,550 | 9,128 | 7,478 |
| Housekeeping | 550 | 280 | 915 | 284 | 1,450 | 1,187 | 550 | 460 |
| Marketing | 2,800 | 532 | 2,800 | 196 | 2,800 | 2,762 | 2,800 | 4,743 |
| Nursing - SNF | 2,780 | 2,266 | 2,500 | 6,849 | 1,780 | 4,059 | 39,100 | 25,652 |
| Transportation | 1,200 | - | 680 | 615 | | | | |
| Utilities | 14,290 | 1,469 | 3,030 | 1,276 | 1,200 | 8,660 | 2,800 | 15 |
| Insurance | | | 11,000 | 3,490 | | 7,460 | | 3,490 |
| Management Fees | 12,900 | - | | | | - | | - |
| Assisted Living | | 179 | 254 | 11,799 | 419 | | | 80 |
| Payroll | - | - | 122,000 | 115,412 | - | - | 117,500 | 110,736 |
| Cap X | 5,700 | 2,850 | 2,500 | 2,850 | 5,700 | - | 2,500 | 960 |
| Resident Refunds (CCRC) | 16,050 | - | 15,000 | - | 21,300 | - | 15,000 | - |
| Misc. | 500 | 706 | 500 | 432 | 500 | 543 | 500 | 573 |
| Total Routine Disbursements | 71,105 | 18,572 | 175,658 | 154,168 | 51,408 | 45,175 | 197,397 | 165,876 |
| RTE Professional Fee Escrow Deposits/Pmts. | 37,600 | 37,600 | 37,600 | - | 37,600 | - | 37,600 | - |
| Indenture Trustee and Counsel | | | | | | | | |
| TOTAL DISBURSEMENTS | 108,705 | 56,172 | 213,258 | 154,168 | 89,008 | 45,175 | 234,997 | 165,876 |
| Surplus/Shortfall | (72,543) | (6,700) | (129,405) | (64,110) | 97,601 | 142,085 | (71,579) | (130,934) |
| Bank Balance - ending (before DIP loan advance or Retainers) | 29,353 | 95,197 | (34,209) | 31,087 | 178,688 | 223,172 | 151,593 | 92,239 |
| DIP LOAN | | | 115,000 | 50,000 | | | | |
| Retainers | | | | | | | | |
| Bank Balance - ending (after DIP loan advance and Retainers) | 29,353 | 95,197 | 80,791 | 81,087 | 178,688 | 223,172 | 151,593 | 92,239 |

Weekly Cash Budget for 10 22 14 DIP Motion

River Terrace Estates, Inc.
Weekly Cash Budget For Period ending Nov. 29

| | Week ending 4-Oct | | Week ending 11-Oct | | Week ending 18-Oct | | Week ending 25-Oct | |
|---|---|---|---|---|---|---|---|---|
| | Budget | Actual | Budget | Actual | Budget | Actual | Budget | Actual |
| Bank Balance - beginning | 92,239 | 92,239 | 180,566 | 180,566 | 146,031 | 146,031 | 338,305 | 338,305 |
| Cash receipts | | | | | | | | |
| IL Revenue | 12,906 | 121,807 | 59,369 | 128,081 | 91,462 | 231,084 | 94,387 | - |
| AL Revenue | | - | | - | | - | | - |
| MS Revenue | | - | | - | | - | | - |
| Entrance Fee | | - | | - | | - | 40,500 | - |
| MCD Revenue | | - | | - | 27,239 | - | | - |
| MCRA/B Revenue | | - | | - | 23,412 | - | 21,254 | - |
| Insurance Rev | | - | | - | (12,500) | - | (12,500) | - |
| Private Pay - HC | 13,151 | - | 58,256 | - | 24,483 | - | 48,587 | - |
| TOTAL | 26,057 | 121,807 | 117,624 | 128,081 | 154,097 | 231,084 | 192,228 | - |
| Disbursements | | | | | | | | |
| Administrative Expenses | 5,000 | 465 | 4,000 | 2,655 | 4,000 | 885 | 4,000 | - |
| Other Exp | | - | | - | | - | | - |
| Lifestyle Expenses | 75 | 649 | 75 | 350 | 75 | 158 | 1,075 | - |
| Maintenance/Grounds | 550 | 3,207 | 2,530 | 735 | 4,056 | 1,159 | 2,444 | - |
| Dining/Kitchen | 8,128 | 7,106 | 8,128 | 7,439 | 8,128 | 7,586 | 9,128 | - |
| Housekeeping | 550 | 783 | 1,465 | 529 | 550 | 532 | 550 | - |
| Marketing | 2,800 | 2,367 | 2,800 | 804 | 2,800 | 150 | 2,800 | - |
| Nursing - SNF | 3,000 | 1,791 | 2,500 | 3,736 | 2,000 | 18,900 | 39,100 | - |
| Transportation | 1,000 | 1,046 | 200 | 892 | 680 | 10 | | - |
| Utilities | 14,290 | 15,275 | 3,030 | 2,232 | 1,200 | 1,370 | 2,800 | - |
| Insurance | | - | 11,000 | 3,490 | | 7,460 | | - |
| Management Fees | 12,900 | - | | 12,042 | | - | | - |
| Assisted Living | | 225 | | 269 | 419 | 121 | | - |
| Payroll | - | - | 117,500 | 114,372 | - | - | 117,500 | - |
| Cap X | 18,100 | - | 2,500 | 12,629 | 2,500 | - | 2,500 | - |
| Resident Refunds (CCRC) | 17,985 | - | | - | | - | | - |
| Misc. | 500 | 565 | 500 | 442 | 500 | 479 | 500 | - |
| Total Routine Disbursements | 84,878 | 33,479 | 156,228 | 162,616 | 26,908 | 38,810 | 182,397 | - |
| RTE Professional Fee Escrow Deposits/Pmts. | - | - | - | - | - | - | - | - |
| Indenture Trustee and Counsel | | | | | | | | |
| TOTAL DISBURSEMENTS | 84,878 | 33,479 | 156,228 | 162,616 | 26,908 | 38,810 | 182,397 | - |
| Surplus/Shortfall | (58,821) | 88,328 | (38,604) | (34,535) | 127,189 | 192,274 | 9,831 | - |
| Bank Balance - ending (before DIP loan advance or Retainers) | 33,418 | 180,566 | 141,962 | 146,031 | 273,221 | 338,305 | 348,137 | 338,305 |
| DIP LOAN | - | - | - | - | - | - | - | - |
| Retainers | | | | | | | | |
| Bank Balance - ending (after DIP loan advance and Retainers) | 33,418 | 180,566 | 141,962 | 146,031 | 273,221 | 338,305 | 348,137 | 338,305 |

10/23/2014

4/4

River Terrace Estates, Inc.
Weekly Cash Budget For Period ending Nov. 29

| | Week ending 1-Nov | | Week ending 8-Nov | | Week ending 15-Nov | | Week ending 22-Nov | | Week ending 29-Nov | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Budget | Actual | Budget | Actual | Budget | Actual | Budget | Actual | Budget | Actual |
| Bank Balance - beginning | 348,137 | 338,305 | 344,343 | 338,305 | 203,474 | 338,305 | 91,836 | 338,305 | 7,162 | 338,305 |
| **Cash receipts** | | | | | | | | | | |
| IL Revenue | 13,124 | - | 61,174 | - | 48,154 | - | 50,016 | - | 85,657 | - |
| AL Revenue | | - | | - | | - | | - | | - |
| MS Revenue | | - | | - | | - | | - | | - |
| Entrance Fee | | - | | - | - | - | | - | | - |
| MCD Revenue | | - | | - | | - | 28,147 | - | | - |
| MCRA/B Revenue | | - | | - | | - | 23,412 | - | 21,254 | - |
| Insurance Rev | | - | | - | | - | (12,500) | - | (12,500) | - |
| Private Pay - HC | 23,256 | - | 24,483 | - | 38,587 | - | 32,778 | - | 13,151 | - |
| TOTAL | 36,379 | - | 85,657 | - | 86,742 | - | 121,853 | - | 107,562 | - |
| **Disbursements** | | | | | | | | | | |
| Administrative Expenses | 5,680 | - | 4,000 | - | 4,000 | - | 5,000 | - | 4,000 | - |
| Other Exp | | - | | - | | - | | - | | - |
| Lifestyle Expenses | 75 | - | 75 | - | 75 | - | 75 | - | 1,075 | - |
| Maintenance/Grounds | 550 | - | 2,530 | - | 550 | - | 4,056 | - | 2,444 | - |
| Dining/Kitchen | 8,128 | - | 8,128 | - | 8,128 | - | 8,128 | - | 9,128 | - |
| Housekeeping | 550 | - | 550 | - | 915 | - | 1,450 | - | 550 | - |
| Marketing | 2,800 | - | 2,800 | - | 2,800 | - | 2,800 | - | 2,800 | - |
| Nursing - SNF | 3,000 | - | 2,500 | - | 2,000 | - | 39,100 | - | 2,000 | - |
| Transportation | 200 | - | 1,200 | - | 680 | - | - | - | | - |
| Utilities | 11,000 | - | - | - | 3,030 | - | | - | 1,200 | - |
| Insurance | 3,490 | - | | - | 11,000 | - | - | - | | - |
| Management Fees | | - | 9,244 | - | | - | 419 | - | | - |
| Assisted Living | | - | | - | | - | | - | | - |
| Payroll | - | - | 117,500 | - | - | - | 117,500 | - | - | - |
| Cap X | 4,200 | - | 2,500 | - | 2,500 | - | 2,500 | - | 2,500 | - |
| Resident Refunds (CCRC) | - | - | - | - | 87,201 | - | - | - | 48,675 | - |
| Misc. | 500 | - | 500 | - | 500 | - | 500 | - | 500 | - |
| **Total Routine Disbursements** | 40,173 | - | 151,527 | - | 123,379 | - | 181,528 | - | 74,872 | - |
| RTE Professional Fee Escrow Deposits/Pmts. | - | - | 75,000 | - | 75,000 | - | 75,000 | - | 75,000 | - |
| Indenture Trustee and Counsel | | - | | - | | - | | - | | - |
| **TOTAL DISBURSEMENTS** | 40,173 | - | 226,527 | - | 198,379 | - | 256,528 | - | 149,872 | - |
| Surplus/Shortfall | (3,793) | - | (140,870) | - | (111,637) | - | (134,675) | - | (42,310) | - |
| **Bank Balance - ending (before DIP loan advance or Retainers)** | 344,343 | 338,305 | 203,474 | 338,305 | 91,836 | 338,305 | (42,838) | 338,305 | (35,149) | 338,305 |
| DIP LOAN | - | | - | | - | | 50,000 | | 50,000 | |
| Retainers | | | | | | | | | | |
| **Bank Balance - ending (after DIP loan advance and Retainers)** | 344,343 | 338,305 | 203,474 | 338,305 | 91,836 | 338,305 | 7,162 | 338,305 | 14,851 | 338,305 |

Weekly Cash Budget for 10 22 14 DIP Motion

## EXHIBIT B

### SUMMARY OF TERMS AND CONDITIONS
### FOR DEBTOR-IN POSSESSION FINANCING

*Set forth below are the principal terms and conditions of the debtor-in-possession loan (the "Loan" or the "DIP Facility") being extended from River Terrace Estates Foundation, Inc. to River Terrace Estates, Inc. The Loan shall be subject to the approval of the Bankruptcy Court in the Chapter 11 Bankruptcy Case of River Terrace Estates, Inc. which is to be filed in the Bankruptcy Court.*

### DIP FACILITY

**Borrowers:** River Terrace Estates, Inc., an Indiana non-profit corporation (the "Borrower")

**Lender:** River Terrace Estates Foundation, Inc., an Indiana non-profit corporation, (the "Lender")

**Bankruptcy Court:** The United States Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division (the "Bankruptcy Court")

**Loan Amount:** $600,000

**Maturity Date:** Upon the earlier of (i) 120 days after the commencement of the Chapter 11 Case of the Borrower in the Bankruptcy Court (the "Chapter 11 Case") or

(ii) confirmation of a plan of reorganization (the "Plan") in the Chapter 11 Case or (iii) the closing of a sale of substantially all of the assets of the Borrower that has been approved by the Bankruptcy Court in the Chapter 11 Case or (iv) conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code.

**Advances:** Subject to all of the terms and conditions set forth in the Interim Order and the Final Order, the Borrower is authorized to request from time to time, and Lender may make, advances on the DIP Facility in compliance with a budget (the "Budget"). All requests by the Borrower for advances shall be made in such manner and form and with such prior notice to Lender as Lender may reasonably require from time to time pursuant to a request form acceptable to the Lender. The Borrower shall be liable for the repayment of each advance, with interest at the rate and calculated in the manner provided herein.

**Use of Advances:** The advances shall be used by the Borrower for working capital needs of the Borrower, consistent with the Budget.

Exhibit 2

**Interest Rate:** The Loan will accrue interest beginning on the date an advance is paid to the order of Borrower at the rate of 5% per annum. Interest on the Loan will be calculated on a 360-day year and actual number of days elapsed in each calendar month. Payment of accrued interest will be deferred until the Maturity Date.

**Default Rate:** At any time when an Event of Default has occurred and is continuing under the Interim Order or the Final Order, all amounts outstanding under the Loan shall bear interest at 2% above the interest rate otherwise applicable thereto.

**Repayment:** There shall be no repayment of interest or amortization of the Loan required until the Maturity Date. Payments on the Loan will be made from cash generated from the business operations of the Borrower, as more specifically set forth herein and in the Interim Order and in the Final Order. Payments will be applied to accrued interest, fees and expenses (including fees and disbursements of counsel) and principal. The entire balance of principal and accrued and unpaid interest thereon will be due and payable in full at the Maturity Date of the Loan, unless otherwise agreed to in the terms of a plan of reorganization.

**Priority:** Amounts owed by the Borrower to the Lender on account of the Loan, including but not limited to all principal, accrued interest, fees, costs and expenses shall constitute, in accordance with section 364 (c) of the Bankruptcy Code, a super-priority administrative priority claim in the Chapter 11 Case, subject only to the payment of valid, properly filed and perfected liens held by the Borrower's pre-petition secured bondholders and *specifically excluding* the right to receive proceeds or be paid from any and all causes of action under Chapter 5 of the Bankruptcy Code and the proceeds thereof

**Collateral Security:** The Loan, including accrued interest, principal, costs, fees and expenses, shall be secured in accordance with section 364(c) and (d) of the Bankruptcy Code by (i) first priority liens on and security interests in and to all of Borrower's unencumbered assets, property and proceeds thereof, specifically excluding any and all causes of action under Chapter 5 of the Bankruptcy Code, all as more specifically set forth herein and in the Interim Order and in the Final Order and (ii) junior priority liens on and security interests in and to all assets of the Borrower that are subject to prior, valid and properly perfected liens and security interests, *specifically excluding* any and all causes of action under Chapter 5 of the Bankruptcy Code and the proceeds thereof.

**Lien Validation and Perfection:** All liens authorized and granted pursuant to the Interim Order and the Final Order entered by the Bankruptcy Court approving the DIP Facility and the adequate protection in favor of the Lender shall be deemed effective and perfected as of the Petition Date in the Chapter 11 Case and no further notice or act will be required to effect such perfection.

**Adequate Protection:** Except with respect to the senior obligations owing to the Bondholders or any other secured creditor of the Borrower, no payments of principal or interest will be made by the Borrower on account of any obligations owing to third parties, encumbered collateral owned by Borrower or not, as long as any amount is outstanding to the Lender under the DIP Facility or with the consent of the Lender or any order of the Bankruptcy Court.

**Conditions Precedent:** The closing of the DIP Facility, the initial funding of the DIP Facility, and each subsequent Advance thereunder, shall be subject to conditions precedent customary and appropriate for financings of this type, including but not limited to: (a) submission of a request for an Advance in compliance with the Budget; (b) approval of each Advance by the Lender ; (c) receipt by the Lender of a certification from the Borrower that no Event of Default has occurred and is continuing as of the closing date, or will occur after giving effect to the transactions contemplated by the Interim Order or the Final Order; (d) satisfaction of all conditions to be set forth in the Interim Order or the Final Order; (e) delivery of (i) a Budget approved by the Bankruptcy Court (f) entry of an Interim Order and a Final Order by 45 days after commencement of the Chapter 11 Case by the Bankruptcy Court after the Petition Date approving the DIP Facility; and (g) the Borrower shall have commenced the Chapter 11 Case in the Bankruptcy Court and is a party to the Interim Order and the Final Order.

**Affirmative and Negative Covenants:** The DIP Facility shall be subject to affirmative and negative covenants and additional covenants that are standard in debtor-in-possession financing facilities which shall be incorporated into the Interim Order and the Final Order.

**Remedies:** Upon any Event of Default under the DIP Loan Documents, the Interim Order and the Final Order and/or the Termination Date, the Lender shall have customary remedies.

3

**Additional**
**Conditions**
**To Financing:**     Compliance with Rule 4001 of the Federal Rules of Bankruptcy Procedure and the entry of the Interim Order and the Final Order.


**Events of Default:**     Events customarily included in debtor-in-possession financing agreements (collectively, "Events of Default"), including, without limitation:

- The Chapter 11 Case shall be converted to a case under Chapter 7 of the Bankruptcy Code or be dismissed.

- The appointment of a Chapter 11 trustee under section 1104 of the Bankruptcy Code, without the prior written consent of the Lender.

- Appointment of an examiner with enlarged powers (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code.

- Entry of a final order by the Bankruptcy Court amending, supplementing, staying, vacating or otherwise modifying the DIP Facility, the Interim Order or Final Order approving the DIP Facility without the prior consent of the Lender.

- Failure to make all payments under the DIP Facility, the Interim Order and the Final Order when due, subject to any applicable grace period.

- Failure to pay any undisputed, material post-petition taxes or indebtedness.

- Breach of any covenant of the DIP Facility, the Interim Order and the Final Order after notice of passage of any applicable grace periods.

- Occurrence of an Event of Default by the Borrower with respect to, or acceleration or demand for payment prior to maturity of, any indebtedness of the Borrower to any person, or with respect to any lien securing any indebtedness of the Borrower.

- Failure of the Borrower to observe or perform any warranty, covenant, condition or agreement to be observed or performed by the Borrower under the Interim Order and the Final Order or any of the other agreements related to the Loan.

- Other Events of Default of the type contained in standard post-petition financing loan documents to the extent customary in debtor-in-possession financing agreements.

4

- Others to be determined and set forth in the Interim Order and in the Final Order and consistent with the terms of the Interim Order and Final Order, to funding a professional fee account for professionals retained by the Borrower in the Chapter 11 Case in the amounts set forth in the Budget. The Carve Out shall be equal to all accrued and unpaid fees plus $100,000.

**Other Conditions:**

1. The Interim Order and the Final Order will more specifically provide for the operation of the Borrower's properties and business by the Borrower. The Borrower will prepare the budget for operation of the Borrower's properties and business, for submission and approval by Lender. The Borrower will be responsible in its independent discretion for making any requests for advances under the DIP Loan.

2. No other incurrence of debt (other than normal trade debt) or granting of liens by Borrower will be allowed, without Lender's prior written approval or an order of the Bankruptcy Court.

3. Nothing in the Interim Order or the Final Order will preclude additional requests for adequate protection by the Lender that are not inconsistent with the Interim Order or the Final Order.

4. At Lender's option, Borrower will establish one or more accounts for deposit of all receipts, provided that any such requests will be consistent with the guidelines of the United States Trustee.

5. Proceeds from operations of the Borrower that do not constitute sales of assets outside the ordinary course of business shall be used in accordance with the budget.

6. At Lender's election, the maturity date of the Loan may be extended and the amount of the Loan may be increased without further court order.

**AGREED**:

**RIVER TERRACE ESTATES, INC.**

_____

Name:_____

Title:_____

**RIVER TERRACE ESTATES FOUNDATION, INC.**

_____

Name:_____

Title:_____

4847-1998-9275v2

0127241.0608061  4818-4225-7948v2