UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| RIVER TERRACE ESTATES, INC., ) | Case No. 14-11829-reg |
| ) | Chapter 11 |
| Debtor. ) | |

**BRIEF IN SUPPORT OF
MOTION TO DETERMINE BID OF DANBURY ROAD HOLDINGS IV, LLC
AS A CONFORMING BID IN CONNECTION WITH SALE
UNDER CONFIRMED PLAN OF REORGANIZATION**

Creditor Danbury Road Holdings IV, LLC, ("**Danbury**") by and through its undersigned counsel and pursuant to sections 1142 and 105 of Title 11 of the United States Code, as amended (the "**Bankruptcy Code**") and Federal Rule of Bankruptcy Procedure 3020, and pursuant to section 5.3.5 of the First Amended Plan of Reorganization confirmed in the instant chapter 11 case, hereby submits this brief in support of the *Motion to Determine Bid of Danbury Road Holdings IV, LLC as a Conforming Bid in Connection with Sale Under Confirmed Plan of Reorganization* (the "**Motion**"), which requests that this United States Bankruptcy Court for the Northern District of Indiana Fort Wayne Division ("**Court**") enter an order determining Danbury's bid to be a conforming bid for all purposes related to the sale (the "**Sale**") of River Terrace Estates, Inc.'s (the "**Debtor**") assets pursuant to the Debtor's First Amended Plan of Reorganization.

**I. INTRODUCTION**

By its Motion, Danbury asks the Court to determine Danbury's bid related to the Sale of the Debtor's assets pursuant to Debtor's First Amended Plan of Reorganization (the "**Plan**") recently confirmed by the Court a "conforming bid" under Article 5 of the Plan. Danbury submitted on December 29, 2014 its bid for the Debtor's continuing care retirement community

located in Bluffton, Indiana. Danbury's bid conforms with the Plan's requirements of a conforming bid (the "**Bid Procedures**") and, as subsequently amended, offers a base cash price of $6.5 million, $500,000 in excess of the minimum required base cash price. Upon information and belief, the Debtor also received one other bid (from a bidder whose identity has not been disclosed to Danbury) at the minimum base sale price of $6 million. Pursuant to the Bid Procedures, the Debtor's receipt of two conforming bids requires that the Debtor hold an auction to obtain the highest and best offer for its assets and maximize the assets available for distribution to creditors.

Incredibly, instead of scheduling an auction, the Debtor has determined to reject Danbury's bid and to proceed to a closing with the other undisclosed bidder at a lower sale price without any competitive bidding. In the Debtor's words: "your submission is not being considered a bid (or a conforming bid)…." Although the Debtor has stated three purported bases for its decision not to consider Danbury's bid a conforming bid, the Debtor's only articulated reason that could arguably impact the issue of whether the bid conformed to the Bid Procedures is that Debtor received Danbury's initial bid of $6 million fifteen minutes after the time set forth in the Bid Procedures for submission of bids. However, such a position by the Debtor, acting as a fiduciary for all stakeholders of the estate with an obligation to maximize value in the best interest of creditors, to reject an otherwise conforming bid because it was received only 15 minutes after the stated deadline and proceed to close with the sole other bidder for a purchase price at least $500,000 less than Danbury is willing to pay without any competitive bidding process to maximize the price, is both misguided and prejudicial to the recovery to creditors in the Bankruptcy Case.

The Debtor has a fiduciary obligation to maximize creditor recoveries. The Debtor proposed to fulfill this obligation under its confirmed Plan by the Sale after an auction if more than one qualified buyer made an offer for the Debtor's assets. Danbury initially submitted a bid with a base purchase price of $6 million, which was subsequently increased to $6.5 million, and which terms substantially conform to the asset purchase agreement included in the Debtor's Plan Supplement. Despite its fiduciary duty to do so, the Debtor decided not to consider Danbury's bid, either as originally submitted or as later modified, and to not proceed with the auction contemplated by the Plan because Danbury's initial bid was received 15 minutes after the time set forth in the Bid Procedures. Instead of holding an auction as contemplated by the Bid Procedures, the Debtor has decided to accept and close on the only other bid it received, which, upon information and belief, offers the minimum bid permitted under the Bid Procedures—$500,000 less than Danbury's offered base cash purchase price.

As contemplated by the Bid Procedures and the Plan, the instant dispute as to whether Danbury's bid is a conforming bid shall be determined by this Court. The Court should find Danbury's bid to be a conforming bid under the Plan for all purposes related to the sale, thereby permitting the auction contemplated by the Plan to proceed in order to determine the best offer for the Debtor's assets and to fulfill one of the central purposes of the Bankruptcy Code and the Debtor's principal fiduciary duty - to maximize recovery for creditors.

## II. BACKGROUND FACTS

On July 22, 2014, the Debtor, as debtor and debtor-in-possession, filed a voluntary petition for relief (the "**Petition**") under the Bankruptcy Code, styled In re River Terrace Estates, Inc., Case No. 14-11829 (the "**Bankruptcy Case**"). The Debtor is continuing in possession of its property and is operating and managing its business as a debtor-in-possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code.  No committee of unsecured creditors or trustee has been appointed in the Bankruptcy Case.

The Debtor operates a licensed continuing care retirement community comprised of 52 residential apartments, 41 assisted living units, 14 memory care support units, and 30 skilled nursing beds (including the land, improvements, and operating assets related thereto, the "**Community**") located in Bluffton, Indiana.

On October 15, 2014, the Debtor filed its First Amended Plan of Reorganization [Dkt. No. 235] (including all supplements, exhibits, appendices, disclosure schedules, and amendments thereto, the "**Plan**").  By Order [Dkt No. 305] (the "**Confirmation Order**") entered on December 22, 2014, the Bankruptcy Court confirmed the Plan and approved the possible Sale of the Debtor's assets, including the Community, and the Bid Procedures set forth in Article 5 of the Plan.

Pursuant to the Plan and Bid Procedures: "The Bankruptcy Court will also enter a sale order pursuant to section 363 if required by the parties."  Plan at § 5.3.5.  Section 5.3.1 of the Plan provides, in relevant part, as follows:

> The Plan Sale of the Community of the Debtor shall be entitled to all of the protections under section 1146 of the Bankruptcy Code.  Further, the Plan Sale of the Community of the Debtor shall be free and clear of any and all liens, claims, encumbrances, mortgages, interests, causes of action pursuant to section 363 of the Bankruptcy Code and applicable law, and any Bidder of the Community shall be entitled to all of the protections afforded under section 363 of the Bankruptcy Code, including but not limited to the protections afforded under section 363(m) of the Bankruptcy Code.

The Bid Procedures, among other things, provide that:

a. prospective bidders were to (a) submit a binding, conforming bid to the Debtor by 5:00 p.m. Eastern Time (the "**Bid Time**") on the "Bid Date", which Bid Date was seven days after the date of entry of the Confirmation, or December 29, 2014 (the "**Bid Date**").  Plan at §5.3;

4

    b. the bid was to be for a certain minimum amount (the "**Minimum Bid**"), including a base cash purchase price of $6 million. Plan at §5.3.2;

    c. to be conforming, a bid must, among other things, include the bidder's asset purchase agreement (the form of which was prepared and filed by the Debtor with its Plan Supplement), "**marked to show any changes (which shall not be less favorable to the Debtor, in Debtor's reasonable discretion)** and in clean form with all exhibits and schedules." Plan at § 5.3.3 (emphasis added); and

    d. "Any disputes regarding the conformity of any Bid…shall be submitted to the Bankruptcy Court for resolution if necessary." Plan at § 5.3.3.

Prior to the Bid Time, Danbury had multiple communications with the Debtor and its counsel regarding Danbury's intent to submit a bid ("**Danbury's Bid**") and terms anticipated to be included within Danbury's Bid. In fact, those communications included a telephone call with Debtor's representatives at approximately 3:00 p.m. on the Bid Date during which, among other things, Danbury stated that it would be submitting the Danbury Bid later that day and was working to revise the form of Danbury Bid to conform to discussions Danbury had with Debtor's counsel. See Declaration of Andrew J. Flame, attached hereto as "Exhibit A" at ¶ 4.

At 5:15 p.m. on the Bid Date, after having used its best efforts to obtain information from the Debtor and submit the bid by the Bid Time, Danbury's counsel delivered to Debtor's counsel by electronic mail (a) Danbury's executed Asset Purchase Agreement (b) Danbury's executed escrow agreement (also required by the Bid Procedures), and (c) the Schedules to the Asset Purchase Agreement (the executed Asset Purchase Agreement and Schedules, collectively, the "**Danbury Original APA**", and together with the executed escrow agreement, the comparison (the "**APA Redline**") of the Danbury Original APA to the Debtor's form of APA attached to its Plan Supplement filed in the Bankruptcy Case (the "**Form APA**"), and the acknowledgements and representations set forth in the cover electronic mail correspondence, the "**Bid Package**"). A true and correct copy of the email delivering Danbury's Bid Package to Debtor is attached hereto as "Exhibit B". Id. at ¶ 5.

5

At 5:30 p.m., Debtor's counsel confirmed his receipt of Danbury's Bid Package, stated that he would consult with the indenture trustee's counsel the next day and revert back to Danbury's counsel. Debtor's counsel's confirmation did not state or indicate that the Debtor considered the Bid Package to not be a "conforming bid" under the Bid Procedures on the basis that the Bid Package was received only minutes after the Bid Time or otherwise. A true and correct copy of Debtor's counsel's email confirming receipt of the Bid Package is attached hereto as "Exhibit C". Id. at ¶ 6.

Danbury's Bid Package conformed with the requirements of the Bid Procedures, including that (a) the Danbury Original APA offered the Minimum Bid for Debtor's assets, (b) the Bid Package included a comparison of the Danbury Original APA to Debtor's form of asset purchase agreement (as contemplated and required by Plan and Bid Procedures), and an executed escrow agreement for Danbury's deposit, and (c) was accompanied by a cash deposit of $600,000, ten percent (10%) of the Purchase Price set forth in the Danbury Original APA. Id. at ¶ 7.

Danbury subsequently realized there were some minor typographical and similar errors, and the next day delivered to the Debtor's counsel a corrected Asset Purchase Agreement that cleaned up some typographical and similar errors, and inserted the name of the escrow agent and Danbury's state of formation where blank in the Danbury Original APA. Danbury included with the transmittal comparisons to each of the Danbury Original APA and the Form APA. A true and correct copy of the email delivering to Debtor's counsel Danbury's corrected Asset Purchase Agreement and comparisons is attached hereto as "Exhibit D". Id. at ¶ 8.

Late in the afternoon of December 30, 2014, Danbury's counsel received a call from Debtor's counsel informing him that another bid had been submitted prior to the Bid Time on a

6

form of asset purchase agreement that was unchanged from the Form APA by an undisclosed party (the "**Competing Bid**"), and that Debtor did not consider Danbury's Original APA or corrected APA to be a higher or better offer because, among other things, it required a sale order under Bankruptcy Code section 363 as a condition to closing, and the Debtor had determined Danbury's Bid was "not a qualified bid" because the Bid Package and wire transfer of the $600,000 deposit thereunder was not received until 5:15 pm on the Bid Date, fifteen minutes after the Bid Time.  Debtor's counsel also stated that the Debtor intended to accept the Competing Bid without scheduling an auction.  Upon information and belief, the Competing Bid contains a base cash purchase price of $6 million. Debtor's counsel also questioned Danbury's commitment to close.

Considering the information provided by the Debtor's counsel on December 30, the very next day, on December 31, 2014, Danbury executed and delivered to Debtor a revised Asset Purchase Agreement (the "**Danbury Amended APA**") substantially identical to the Form APA, increasing its offered base cash purchase price from $6 million to $6.5 million in order to confirm its previously stated commitment to close and evidence its intention to engage in substantial competitive bidding, and increased its deposit by $50,000. Id. at ¶ 9.  Together with the Danbury Amended APA, Danbury delivered a comparison of the Danbury Amended APA to the Form APA.  A true and correct copy of the email delivering to Debtor's counsel Danbury's Amended APA and related comparison is attached hereto as "Exhibit E".  Id. at ¶ 10.

Later on December 31, 2014, Debtor informed Danbury by electronic mail that it did not consider the Danbury Bid Package or Danbury Amended APA a "bid (or conforming bid)" under the Bid Procedures.  The Debtor asserted three bases in its email notice for purportedly not considering Danbury's offer a bid under the Bid Procedures: (i) the Bid Package and deposit

were received fifteen minutes after the Bid Time; (ii) "the APA received has a number of additional conditions and terms which greatly increase the closing risk to RTE (and requests items that RTE cannot provide)", and (c) the Debtor believes "it has become apparent from diligence inquiries that your group is not yet comfortable enough with diligence to be firmly committed to a closing." (the "**12/31 Email**", a true and correct copy of which is attached hereto as "Exhibit F"). Id. at ¶ 11. Only the first reason stated—that the bid was received only minutes after the bid deadline—could even arguably go to the issue of whether Danbury's Bid was a conforming bid, which conforming bid would trigger an auction under the Bid Procedures. The Debtor's other stated reasons for not considering Danbury's Bid a bid at all, are not only vague, but would not impact whether Danbury's Bid was a conforming bid under the Bid Procedures, but only to whether Danbury's Bid was higher or otherwise better than the only other bid received by the Debtor.

### III. QUESTION PRESENTED

When faced with a higher but untimely bid, bankruptcy courts balance the interests of finality of bankruptcy sales against the benefit of increased recovery for the bankruptcy estate. Finality becomes increasingly paramount as time passes and the participants' and the public's reliance on the sale solidifies. Should the court find a higher and otherwise conforming bid[1] was a conforming bid when it was submitted only 15 minutes after a bid deadline?

**Suggested Answer:** Yes.

---

[1] As set forth above, in its 12/31 Email, the Debtor purports to state two other bases for declaring that Danbury's Bid was not a bid at all (or a conforming bid): "In addition, the APA received has a number of additional conditions and terms which greatly increase the closing risk to RTE (and requests items that RTE cannot provide), and over the last week it has become apparent from diligence inquiries that your group is not yet comfortable enough with diligence to be firmly committed to a closing." The Debtor did not explain or provide further detail as to either of these two items and Danbury disputes the Debtor's conclusory statements. In any event, these additional explanations for not considering Danbury's Bid do not go to whether Danbury's Bid was a conforming bid under the Bid Procedures, but merely to whether Danbury's Bid was a higher or otherwise better bid than the other bid purportedly received by the Debtor. In a typical bankruptcy sale, after receiving two bids, the Debtor would have discussions with each bidder in an effort to improve the monetary and non-monetary terms of each bidder's offer, and then hold an auction. In fact, after the Debtor told Danbury that the other bidder had executed the Debtor's form of asset purchase agreement without change, Danbury submitted the Danbury Amended APA with few changes from the Debtor's Form APA and with a purchase price of $500,000 more than its original offer.

## IV. ARGUMENT

**1. The Court Should Find Danbury's Bid to be a Conforming Bid**

The Debtor's confirmed Plan contemplates that "disputes regarding conformity of any Bid…shall be submitted to the Bankruptcy Court for resolution if necessary." Plan at §5.3.5. Further, a bankruptcy court has broad authority under §§ 105[2] and 1142 of the Bankruptcy Code to order parties to comply with reorganization plans. In re Goldblatt Bros., Inc., 132 B.R. 736, 741 (Bankr. N.D. Ill. 1991). Section 1142(a) of the Bankruptcy Code requires the debtor or any entity organized for the purpose of carrying out the plan to carry out the plan and comply with any court orders. Section 1142(b) of the Bankruptcy Code empowers the Court to direct the debtor or any other necessary party to perform any act that is necessary for the consummation of the plan. See In re Doty, 129 B.R. 571, 577 (Bankr. N.D. Ind. 1991); In re Riverside Nursing Home, 137 B.R. 134, 138-39 (Bankr. S.D.N.Y. 1992) ("Subsection (b) of § 1142 expressly authorizes the court to direct a recalcitrant debtor or other party to perform acts necessary to consummate the plan.") (citing Goldblatt Bros., 132 B.R. at 741). Additionally, Rule 3020(d) of the Federal Rules of Bankruptcy Procedure authorizes the Court to issue any order necessary to administer the estate notwithstanding entry of a confirmation order. See Fed. R. Bankr. P. 3020. In this case, as contemplated by the confirmed Plan, it is appropriate for the Court to determine and determine Danbury's Bid a conforming bid under the Bid Procedures, which will permit the contemplated auction to proceed and maximize recovery to creditors.

A debtor-in-possession owes fiduciary duties to its creditors. Peterson v. Scott (In re Scott), 172 F.3d 959, 967 (7th Cir. Ill. 1999); In re Schipper, 933 F.2d 513, 515 (7th Cir. Ill. 1991). In the context of a sale outside of the ordinary course of business, the debtor-in-

---

[2] Section 105 of the Bankruptcy Code provides, in relevant part, that a bankruptcy court "… may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

9

possession's fiduciary duties require the sale be in the best interests of the bankruptcy estate. In re Telesphere Communications, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994); see also Schipper, 933 F.2d at 515 (noting that sale involves a fiduciary duty). The governing principal of a bankruptcy sale is that the trustee or debtor-in-possession must obtain the best price for the bankruptcy estate and its creditors. Corporate Assets, Inc. v. Paloian, 368 F.3d 761, 767 (7th Cir. Ill. 2004); In re Chung King, Inc., 753 F.2d 547, 549 (7th Cir. 1985). As one court wrote:

> It is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate. In re Blue Coal Corporation, 59 B.R. 157, 162 (Bankr. M.D. Pa. 1986). See also In re Robison, 74 B.R. 646 (E.D. Mo. 1987) (holding that in order to maximize the sale price of the property of the bankruptcy estate, the trustee has the exclusive right, power and authority to sell such property); Zaccaro v. Bowery Savings Bank (In re Jewel Terrace Corp.), 10 B.R. 1008 (E.D. N.Y. 1981) (recognizing that the trustee has a fiduciary duty to protect the interests of the debtor's shareholders and creditors, so that the trustee properly sought approval of the more advantageous contract for the sale of the debtor's assets).

In re Atlanta Packaging Products, Inc., 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988). Competitive bidding yields higher offers and thus benefits the estate. The objective is to maximize the bidding, not to restrict it. Id. (citing In re The Ohio Corrugating Company, 59 B.R. 11, 13 (Bankr. N.D. Ohio 1985)).

Bankruptcy Courts have broad discretion in extending the bidding period to permit a late offer that provides a greater recovery for the estate. In re Financial News Network, Inc., 980 F.2d 165, 170 (2d Cir. N.Y. 1992). When faced with higher bids submitted after a bidding deadline, courts must balance the competing interest of maximizing creditor recoveries with promoting the finality of judicial sales. See Corporate Assets, Inc. v. Paloian, 368 F.3d 761, 768 (7th Cir. Ill. 2004); Four B. Corp. v. Food Barn Stores (In re Food Barn Stores), 107 F.3d 558, 565 (8th Cir. Mo. 1997); Financial News Network, 980 F.2d at 170. In the context of a late bid, a bankruptcy court's discretion to reopen the bidding in pursuit of estate maximization

diminishes as the sale comes closer to becoming final and as the expectations of the participants solidify. Corporate Assets, 368 F.3d at 768.  Once the sale of the debtor's assets to the auction's victor has been confirmed by the Bankruptcy Court, for example, the public interest in finality of judicial sales is high and the parties reasonably expect that the bidding is over.  Id.  In that situation, a court should not award the sale to a late bid that merely offers more money than the bid previously approved by the court.  Id.  On the other hand, "where the sale has not progressed to a comparable plateau," the bankruptcy court has broad discretion to decide whether to entertain a late bid.  Id. (quoting Food Barn, 107 F.3d at 565).  Where the bidding for a debtor's property is "complex and fluid," and where the court has not yet approved a sale to a particular bidder, a late bid may not unduly frustrate the reasonable expectations of the participants or compromise the integrity of the process.  Id. (quoting Financial News, 980 F.2d at 170).  In that setting, a court may reopen the bidding to secure additional recovery for the estate and its creditors without an additional showing that the initial bids were grossly inadequate or that the original bidding was tainted by fraud or some other irregularity.  Id. (citing Food Barn, 107 F.3d at 567).

    Here, the balancing is easy.  There is no reasonable expectation by any party that a conforming bid received only minutes after the Bid Time would be rejected. Case decisions examining the issue involve factual situations under different and more advanced stages of the process, such as after an auction has occurred, or when the sale hearing has commenced or has been completed, not where the auction has not been scheduled at all because the competing bid is received only minutes after the bid deadline.

    Yet that appears to be precisely what the Debtor intends to do in this case.  The Plan and Confirmation Order contemplate a sale of the Debtor's assets to the highest bidder following an

auction if more than one prospective purchaser submits a bid.  Danbury submitted a bid conforming to the bid procedures, albeit only minutes after the Bid Time.  The Court should determine Danbury's Bid a conforming bid, thereby requiring an auction for the Community.  Upon information and belief, Danbury's Bid, once recognized as a conforming bid, will result in a Sale with proceeds of at least $500,000 more for the bankruptcy estate than the other bid received by the Debtor and upon which the Debtor intends to close without an auction or further notice to creditors.

The Debtor cannot credibly argue that acceptance of Danbury's Bid will undermine confidence in the finality of judicial sales.  Danbury's Bid was delivered only 15 minutes after the Bid Time.  No party was frustrated here; the Debtor was well aware that Danbury's Bid was in the process of being delivered and the Debtor's counsel had multiple communications with Danbury regarding Danbury's intent to submit a bid and the terms of its bid.  The other bidder cannot have had a reasonable expectation that the Debtor, having the fiduciary duty to maximize value, would pursue such a hyper technical and unreasonable enforcement of the Bid Deadline that deprives the estate and its creditors of additional recovery, which Danbury believes currently stands at $500,000 if its bid is determined to be a conforming bid, and could increase at the auction contemplated by the Plan.

Danbury's Bid, submitted minutes after the Bid Time, is a conforming bid.  The Debtor apparently has decided not to act in the best interests of creditors, so the Court should grant the appropriate relief to protect the estate and its creditors.

## V. CONCLUSION

The Court should determine that Danbury Road Holdings IV, LLC's bid is a conforming bid for all purposes related to the sale contemplated in the Debtor's confirmed First Amended Plan of Reorganization, thereby providing the estate at least $500,000 in additional proceeds from the Sale and allowing the auction contemplated by the Plan to proceed.  Upon information and belief, absent the granting of such relief on an expedited basis, the Debtor will close on the Sale with the undisclosed other bidder at a lower purchase price, without further notice to the Court or creditors.  The Debtor should not be permitted to ignore its fiduciary duty by chilling the bidding process provided by its own Plan by ignoring Danbury's Bid because it was submitted minutes after the time set forth in the Bid Procedures.  Danbury's participation in this Sale process as a competing bidder will increase the recovery to the bankruptcy estate and its creditors by at least $500,000 and, following an auction, perhaps even more.  Danbury respectfully requests that the Court determine that Danbury's Bid is a conforming bid.

Dated: January 5, 2015                                Respectfully submitted,


    /s/  Andrew T. Kight
Michael P. O'Neil (moneil@taftlaw.com)
Andrew T. Kight (akight@taftlaw.com)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
Tel: (317) 713-3500
Fax: (317) 713-3699

*Attorneys for Danbury Road Holdings IV, LLC*

2303419